After the work was finished, the plaintiff demanded payment from defendant by mail, several times. In response to his last request, he received the promissory note of defendant's husband, which was not paid at its maturity. Plaintiff sued him thereon, and recovered judgment thereon in New Jersey. The flat is one known, I believe, as a "community flat," owned by its occupant usually. It does not appear in this case that the defendant was owner of the flat in which the repairs were done. A married woman may make contracts, and she is liable thereunder just as if she were a *feme sole*, it is true; but such is not the case where she contracts as a married woman, and not in her individual capacity. In matters concerning the repair or management of her husband's household or premises, when acting in the capacity of a married woman, she is only the agent of her husband, and cannot be held as a principal. All the common-law disabilities apply to contracts of that character, and in reference to such contracts her liability is not any greater to-day than it was prior to the passage of the acts which removed her disability to make contracts. The acceptance of defendant's husband's note, and subsequent suit and judgment thereon, I think, indicate that plaintiff intended to give credit to him, and not to defendant personally, and is conclusive against plaintiff. *McCausland* v. *King*, (Mich.) 26 N. W. Rep. 826. In fact, the case has abundant evidence showing that plaintiff recognized defendant as a married woman, and dealt with her as such, and apparently looked to the husband as his debtor. I do not think that it was necessary in this case for defendant to plead coverture or payment by acceptance of her husband's note, the theory of her defense being that her husband was plaintiff's debtor, and not herself; but, so as to avoid the force of such objection, in case it has any, the pleadings are hereby amended so as to conform to the proof, if so desired by defendant.

We think that the judgment should be affirmed.

---

### WOLTERS *v.* SCHULTZ.

(*City Court of New York, General Term.* November 25, 1892.)

BREACH OF PROMISE OF MARRIAGE—EXCESSIVE DAMAGES.

 Plaintiff first met defendant as a customer in her father's store. In seven weeks they became engaged to be married, the wedding to take place in a very short time, on a day fixed. Defendant failed to keep his engagement, and afterwards proposed an unlawful alliance with her. It appeared that she knew during their courtship that he sustained a like relation with another woman. *Held*, that a verdict for $25,000 damages being about one sixth of his admitted fortune, was excessive.

Appeal from trial term.

Action by Georgine C. Wolters against Louis Schultz for breach of promise of marriage. Judgment for plaintiff. Defendant appeals. Reversed.

Argued before EHRLICH, C. J., and NEWBURGER and MCCARTHY, JJ.

*Campbell & Murphy*, (*David Leventritt* and *Geo. H. Yeaman*, of counsel,) for appellant. *George W. Gibbons*, (*Isaac L. Egbert, John C. Sheehan*, and *Edward Browne*, of counsel,) for respondent.

EHRLICH, C. J. A patient examination of the record has satisfied the conscience of the court that the appeal should prevail, and to avoid misapprehension we place our decision distinctly upon the ground that a review of the facts inspires the belief that the interests of justice require the remanding of the cause to another jury. In this and all like cases the jury is the primary, and must be the final, arbiter of damages; but to us the power is intrusted, and upon us is enjoined the duty, of reviewing verdicts which are challenged by appeal. We must proceed with deliberate caution, in the interests of justice, but we should act with resolute vigor when convinced that the verdict (whether plainly excessive or clearly inadequate) must have been illegally in-

fluenced; and we are so convinced in the case at bar. Assuming, as we are bound to do, the substantial correctness of plaintiff's testimony, early in February, 1891, she first met defendant as a customer in her father's cigar store; she being then about 31 years of age, and acting occasionally as a clerk therein. Seven weeks later a marriage engagement had been entered into with defendant, and the wedding day fixed for the 21st day of June following. Defendant declined or failed to keep the engagement, and this action promptly followed, resulting in a verdict against him for $25,000, this sum being about one sixth of his admitted fortune. The brief length of the acquaintance before the engagement, the short duration of the engagement itself, and the absence of all evidence tending to show malice, brutality, or other wickedness of defendant in the making or breaking of the contract, or during its existence, sufficiently negative the legal propriety of the verdict rendered. The only testimony in the record that would seem to justify punitive damages is that of plaintiff, to the effect that, after defendant had refused to consummate the marriage engagement, he proposed an unlawful alliance with her; but, since her knowledge that during the courtship he was sustaining a like relation to another person did not shake her confidence in him, nor diminish her respect or love for him, or her desire to marry him, it is inconceivable that the indecent proposal alleged should have wounded her sensibilities to an extent that would justify the verdict; nor, standing alone, would this evidence be sufficient to support a finding that defendant never intended to marry plaintiff, but deliberately proposed to deceive her.

A new trial being necessary, it would be idle to review in detail the various rulings questioned by appellant's exceptions; but a brief statement of our views as to damages in actions of this nature will cover many of these rulings, and may guide any future trial of this or other similar actions. Whenever it is proved that a defendant has wrongfully broken his promise to marry plaintiff, without fault on her part, the law requires and the jury must award a recovery of damages. These damages should include (*a*) all expenses justly incurred upon faith of the violated contract, and by reason thereof, and all pecuniary loss directly caused thereby; (*b*) a sum sufficient, in the discretion of the jury, calmly and judiciously exercised, to vindicate plaintiff's character; (*c*) in case defendant is shown to have acted maliciously, unfeelingly, or with evil or dishonest intention, a further award of damages must be made, sufficient to be a punishment to defendant and a warning to others, and thus a safeguard to society. The element of damage first mentioned is usually trifling in amount. In the case at bar a few hundred dollars is mentioned as its limit. The jury must be allowed to estimate the supposed money value to plaintiff of the marriage contract. The relation which an engagement contemplates lies at the foundation of social order. The obligations it imposes, and the right it assures, are mutual and reciprocal. It holds forth the promise of benefits and blessings which can never be tested by a money standard. Therefore it is not to be tolerated that a jury should ever be allowed to speculate upon the net money value to a plaintiff of a violated marriage agreement. Beyond the immediate pecuniary loss, we think that all other damage to which plaintiff herself is entitled may be referred to her proper vindication, in view of all the facts and circumstances attending the contract, and the violation thereof on defendant's part. It is true that the authorities declare that plaintiff should have some indemnity or compensation for the disappointment of her expectations, her wounded feelings, her mortification, and the harm done to her worldly prospects; but we think the meaning of these expressions is fully satisfied when the jury shall be allowed, under proper instructions, to take them into consideration in estimating and fixing a sum which shall properly express the vindication to which she is deemed entitled. It must not be understood that disappointed hopes and mental suffering shall have no

weight in fixing the damages, but in no just sense can there be compensation for an injured name or a wounded spirit. The law abhors any attempted traffic in character or in suffering, and no conceivable standard of their money value has ever been set up. But as to this element of damage, in fairness it must be said that whenever a man unjustly spurns the hand of a woman which he had won in promised marriage, by the act itself he makes a thrust at her character. In the eyes of her relatives and acquaintance she is in a measure dishonored, even though he had been guilty of no open slander. To make a proper award of damages, the jury should scan and weigh the words and acts, and thereby ascertain the leading motives of both parties. It may consider their social standing, family relations, worldly fortunes, extent and duration of intimacy, length of courtship, and the degree or lack of culture, refinement, and delicate sensibility possessed by each, and the manifestation of the same in their conduct towards and intercourse with each other. If a plaintiff enters into a marriage engagement from mercenary motives only, she may still recover, if she intended and was willing to carry out the agreement; but in such event the damage should not exceed the actual pecuniary loss or outlay, since disappointed love of defendant's money furnishes no ground of legal redress, and she could not justly complain that defendant's conception of the contract, or his standard of duty, was not higher than her own. Whatever harm to plaintiff's prospects in life has been caused by the nonfulfillment of the contract can only be estimated and remedied by courts and juries by way of vindication of her character, in view of all the attendant circumstances. The same is true as to her wounded feelings and mental suffering. These, when properly established to the satisfaction of the jury, fairly indicate serious injury to plaintiff's good name, for they show the plaintiff herself highly valued it. Vindictive damages should not be awarded upon proof that is doubtful or unconvincing, and only upon evidence of malicious or unfeeling conduct or evil intention on the part of the defendant. It is true that marriage contracts are favorites of the law, but this alone will not justify an award of punitive damages. In reaching their conclusion, the jury may take into consideration plaintiff's previous social standing and pecuniary circumstances, but not with a view of carving out of defendant's estate a sum sufficient either to improve or maintain such condition. They should consider these matters with reference to their bearing upon the injury which plaintiff has suffered, and the sum which may properly be awarded by way of fair reparation and just vindication. The amount of defendant's worldly resources may be considered. It is plain that a verdict of a few hundred dollars against one defendant might sufficiently vindicate a plaintiff, and also adequately punish the wrongdoer, while in another case a like verdict would amount practically to no redress whatever, and as a supposed penalty would excite derision. It is self-evident that the jury's task in a case like the present is difficult and delicate. Specific instructions, covering every possible question that may arise, cannot well be formulated. The objects to be sought should be carefully set forth, but the particular weight to be given to each item or element of damage alleged must be left to the sound discretion and judicial temper of the jury itself. The views herein expressed, it is believed, are as precise as the nature of the questions permit, and may sufficiently cover the principal matters likely to arise upon another trial, which is hereby ordered, with costs to appellant to abide the event. All concur.