HONORA MAY O'BRIEN, Plaintiff, *v.* JOHN BERNARD MANNING, Defendant.

(Supreme Court, Queens Trial Term, August, 1917.)

Marriage — action for breach of promise of — damages — trial — when motion to set aside verdict granted.

Where in an action for breach of promise of marriage plaintiff, who was twenty-nine years of age, admits that she did not love defendant who, though eighty-four years old and very rich, maintains considerable vigor though partially palsied, and it appears that there was no period of courtship or engagement,

that the plaintiff sustained no loss of social position,. no loss of a chance to marry another, and incurred practically no expense in preparation, her only elements of damage being her mortification and wounded pride, and the loss of benefits she would have had, a verdict in her favor of $225,000, of which $25,000 was awarded as punitive damages and the balance as compensatory damages, will be reduced to $125,000, and in the event that plaintiff does not accept such reduction a motion to set aside the verdict and for a new trial will be granted.

MOTION to set aside a verdict.

Stephen C. Baldwin, for plaintiff.

Martin W. Littleton, for defendant.

CROPSEY, J. The only question arising on the motion to set aside the verdict is whether it is excessive. The jury awarded the plaintiff $225,000 damages. They divided this sum and stated that $25,000 of it was as exemplary or punitive damages and $200,000 as compensatory damages.

In actions for breach of promise of marriage the amount of the damages is peculiarly one for a jury's determination. While the rule of law which defines the elements of damage is clear, the opinions as to the amount of such damages will vary greatly. So appellate courts seldom interfere with the amount of the verdict in such an action. And the trial courts do not interfere either if there is any reasonable basis upon which the verdict could have been found, and there is no reason to believe the jury was swayed by sympathy or prejudice or passion.

The defendant is very rich, but very old, and these and other facts put this case in a class by itself and no other case to which attention has been called is an aid in determining this motion. This case, fortunately, is free of the harrowing circumstances that not infrequently are present in actions of this character,

and which naturally and properly increase the damages. It also lacks a number of elements of damage which are usually present. Here the plaintiff admitted she did not love the defendant, and so there was no wounding of the affections. She is twenty-nine years of age and the defendant is eighty-four, and while he maintains considerable vigor he is partially palsied. There was no period of courtship or engagement. The offer and the promise were to be followed in a few days by the ceremony, and in that short interval the breach occurred. The plaintiff sustained no loss of social position, no loss of a chance to marry some one else, and she incurred practically no expense in preparation. Her only elements of damage were her mortification and wounded pride, and the loss of benefits she would have had. Necessarily the loss of benefits is the principal factor in her damages. As said in *Wolters* v. *Shultz,* 1 Misc. Rep. 196, 199, 200: '' If a plaintiff enters into a marriage engagement from mercenary motives only, she may still recover, if she intended and was willing to carry out the agreement; but in such event the damage should not exceed the actual pecuniary loss or outlay, since disappointed love of defendant's money furnishes no ground of legal redress, and she could not justly complain that defendant's conception of the contract, or his standard of duty was not higher than her own.''

What '' pecuniary loss '' has the plaintiff here suffered? That is measured in part by the defendant's means, but other elements enter into it. The age of the defendant, his health and probability of life, his manner of living, his social status, his generosity or his niggardliness, these are also to be considered. *Bennett* v. *Beam,* 42 Mich. 346. While there is no direct proof of defendant's means, his reputed wealth is from $15,000,000 to $20,000,000, and, as he took the

witness stand in his own behalf and did not say how much he was worth and did not deny that he was as rich as he was reputed to be, it can safely be assumed the reputed figures do not overstate the size of his fortune. *Chellis* v. *Chapman*, 125 N. Y. 214, 221. The evidence shows that the defendant lived very simply, that he was most frugal and economical, even parsimonious, and did not live on any scale commensurate with his great wealth. Nor did he hold any prominent social position, such as is not infrequently acquired by persons who are the possessors of large fortunes.

The conditions under which the plaintiff would have lived had she married the defendant are plainly set forth in the proof. It is manifest that the great wealth of the defendant would not have been of corresponding benefit to the plaintiff. The worldly advantage she would have obtained by becoming his wife would probably have been no greater than if he was worth only $1,000,000. A possible inheritance or gift by will cannot be considered as an element of damage. An inchoate right of dower might be so considered, for that is determined upon marriage and cannot be taken away, but there is no proof here upon which to make an award for such a loss. Beyond a certain figure, additional wealth does not furnish the basis for increased damages in such cases. Then, too, the age and probability of life of the defendant must be considered. The plaintiff's loss of benefits would be measured in length of time by the life of the defendant. Under the mortality tables his probability of life is limited to a few years. Under these conditions the sum awarded for compensatory damages, namely, $200,000, seems grossly excessive. By no reasonable possibility on the evidence in the case

could the plaintiff have suffered in " pecuniary loss " to such an extent.

Evidence was introduced on the trial which naturally aroused a feeling against the defendant. There was no objection made to its admission and so no error arises, but it is not unlikely that it accounts for the size of the verdict. And now the reference is not to the matters set up in the answer. It is to the proof that the defendant strangled his daughter's pet dog, for no reason apparently except he did not approve of dogs, and that he was expelled from the stock exchange for altering some certificates, and that he had been sued by his former wife for a separation, on charges of cruelty and non-support. These matters necessarily prejudiced the jury against the defendant, even though it was done unconsciously, and they must account for the result.

The jury were instructed under what circumstances they could award exemplary damages, and they were fully justified in so doing. The charges against the plaintiff, made by the defendant in his answer, were untrue and were known by him to be untrue at the time. As he admitted on the stand they were put in the answer " to protect " himself against the claim made by the plaintiff. Such a step was unjustified; it was even inexcusable. It was vicious, and showed an utter disregard of the plaintiff's rights and feelings. It merited punishment and so an award of exemplary damages.

The verdict must be reduced to $125,000, or if the plaintiff does not accept such reduction within ten days after the service of a copy of the order to be entered hereon a new trial must be granted. Execution of the judgment will be stayed for thirty days after notice of its entry.

Ordered accordingly.