SARAH S. CHELLIS, Respondent, *v.* JOHN B. CHAPMAN, Appellant.

Upon the trial of an action for a breach of promise of marriage, evidence of the defendant's general reputation, as to wealth, is competent upon the question of damages.

*James* v. *Biddington* (6 C. & P. 589); *Dain* v. *Wycoff* (7 N. Y. 191), distinguished.

*It seems* that in such a case it is proper to present to the jury all of the circumstances which might be supposed to have presented themselves to the mind of the plaintiff when the offer of marriage was made.

In such an action exemplary or punitive damages may, under certain circumstances, be allowed.

If the conduct of the defendant in violating his promise is characterized by a disregard of the plaintiff's feelings or reputation; if he has placed her or induced her to place herself in a false position, or to forego temporal advantages; if the breach of promise is unjustifiable; if the defendant spreads upon the records matters in defense of the action which are scandalous and tend to reflect discredit upon the plaintiff or stain her reputation, any and all of these circumstances may be considered by the jury and availed of by them to enhance the damages.

In such an action, the following facts appeared: Plaintiff, who was a school teacher, resigned her position in order to marry defendant; the latter denied requesting her to do this, but admitted that he expected she would. The wedding day was agreed upon, the usual preparations were made by plaintiff and relatives and guests bidden to the ceremony, but defendant failed to appear and alleged as an excuse physical ailments. There was evidence to the effect that he was evading the performance of his promise and shamming illness. Defendant admitted he had no fault to find with the plaintiff; he charged in his answer that she had no affection for him, but entertained a purpose to procure money from him on the pretense of his promise to marry her and his breach thereof. *Held*, that the court properly submitted to the discretion of the jury the allowance of exemplary damages.

Particular words or expressions in a judge's charge, which taken by themselves, are objectionable or seem to be erroneous, will not be a ground of reversal, if when read in connection with the rest of the charge, the sense of language used is made clear, its meaning explained and the instruction as to the subject-matter, as a whole, is not uncertain or erroneous.

(Argued December 9, 1890; decided January 13, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made April 30, 1889, which affirmed a judgment in favor of plaintiff entered upon a verdict and affirmed an order denying a motion for a new trial.

This was an action to recover damages for a breach of promise of marriage.

The facts, so far as material, are stated in the opinion.

*Watson M. Rogers* for appellant. It was error to permit evidence of defendant's general reputation as a man of wealth.

(*People* v. *Beach*, 87 N. Y. 508; *Kniffer* v. *McConnell*, 30 id. 285; *Crosier* v. *Craig*, 47 Hun, 83; Code Civ. Pro. §§ 828, 870; *Becker* v. *Koch*, 104 N. Y. 394; *Cross* v. *Cross*, 108 id. 628; 1 Greenl. on Ev. §§ 99, 138; Whart. on Ev. § 253; *Halliday* v. *McDougall*, 20 Wend. 81; 22 id. 264; *Harrison* v. *Henderson*, 23 N. H. 498; *Perkins* v. *Stebbins*. 29 Barb. 523; Abbott's Trial Ev. 40; *Kenyon* v. *People*, 26 N.Y. 203; *McCarty* v. *Terry*, 7 Lans. 236; *Goddard* v. *Pratt*, 16 Pick. 402, 433; *Trowbridge* v. *Wheeler*, 1 Allen, 162; *Baldwin* v. *N. R. R. Co.*, 4 Gray, 333; *Davis* v. *Wood*, 1 Wheat. 6; *Queen* v. *Hepburn*, 7 Cranch, 290.) The court erred in submitting to the jury the question of exemplary damages. (2 Greenl. on Ev. § 253; *Cowell* v. *Day*, 18 Wkly. Dig. 98; *Kiff* v. *Youmans*, 86 N. Y. 324; *Johnson* v. *Jenkins*, 24 id. 254.) The court erred in charging the jury that in fixing the amount of damages plaintiff is entitled to such sum as would place her in as good a pecuniary condition as she would have been if the contract had been fulfilled. (Schuler on Husband & Wife, §§ 60, 67, 69, 70.)

*Hannibal Smith* for respondent. The court charged the jury as favorably for the defendant as the evidence would warrant, in submitting the question of the breach of the promise to them. And the finding by the jury of the breach of the contract is fully sustained by the authorities. (Abbott's Trial Ev. 678; *Hubbard* v. *Bonesteel*, 16 Barb. 360; *Willard* v. *Stone*, 7 Cow. 22; *Johnson* v. *Smith*, 3 Pitts. 184; *Coil* v. *Wallace*, 24 N. J. L. 29; 63 Am. Dec. 540–542.) The amount of the verdict is just and proper. The grounds for damages fully sustain the verdict, and the same is not excessive. (*Wood* v. *Hurd*, 2 Bing. [N. C.] 166; *Smith* v. *Woodfine*, 1 C. B. [N. S.] 660; *Campbell* v. *Paige*, 50 N. Y. 658; *S. O. Co.* v. *A. Ins. Co.*, 79 id. 506; *Peck* v. *N. Y. C. & H. R. R. R. Co.*, 70 id. 587.) The fact that after the answer, and at the time of the trial of this case, because of the character of the defendant's answer, the plaintiff became unwilling to marry the defendant, is no defense; nor is it a circum-

stance in mitigation of damages. (*Bennett* v. *Beam*, 42 Mich. 346; 36 Am. Rep. 442; *Southard* v. *Rexford*, 6 Cow. 254, 258; *Kurtz* v. *Frank*, 76 Ind. 594; 40 Am. Rep. 275; *Blatt-macher* v. *Saal*, 7 Abb. Pr. 409.) The evidence as to the situation of the plaintiff, her preparation for the marriage, her humiliation by reason of the breach of the contract and the pecuniary condition of the defendant, was competent. (*Fow-ler* v. *Martin*, 1 T. & C. 377; 56 N. Y. 676; *Button* v. *McCauley*, 1 Abb. Ct. App. Dec. 282; *Wilcox* v. *Green*, 23 Barb. 639; *Trelaway* v. *Coleman*, 2 Starkie, 191; Abbott's Trial Ev. 677, 678; *Tompkins* v. *Wadley*, 3 T. & C. 424; *McKee* v. *Nelson*, 4 Cow. 355; Whart. on Ev. 512; *James* v. *Biddington*, 6 C. & P. 589; *Hall* v. *Wright*, 96 Eng. C. L. 763; *Brown* v. *Barnes*, 39 Mich. 211; *Bennett* v. *Beam*, 42 id. 346; *Allen* v. *Baker*, 86 N. C. 91; *Harrison* v. *Swift*, 13 Allen, 144; *Sprague* v. *Craig*, 51 Ill. 288; Sedg. on Dam. [7th ed.] 146; *Lawrence* v. *Cooke*, 56 Me. 187; Mayne on Dam. § 677; *Kerfoot* v. *Marsden*, 2 F. & F. 160; *Kniffin* v. *McConnell*, 30 N. Y. 285; *Crandall* v. *Quinn*, 19 J. & S. 276; *Crosier* v. *Craig*, 47 Hun, 83; 3 Addison on Cont. § 1360; *Kelly* v. *Riley*, 106 Mass. 339; *Burnham* v. *Corn-well*, 63 Am. Dec. 546; *McPherson* v. *Ryan*, 26 N. W. Rep. 321; *Johnson* v. *Jenkins*, 24 N. Y. 252; *Thorn* v. *Knapp*, 42 id. 474.)

GRAY, J. The plaintiff has recovered a verdict for $8,000, as damages for the breach by defendant of his promise to marry her. The proofs abundantly justified the jury in find-ing as they did, but the defendant insists that the trial judge erred in his rulings upon the evidence and in his charge. He does not raise any question about the fact of his agreement to marry the plaintiff, and, indeed, he could not well do so, as it was established out of his own mouth. But he thinks his case was prejudiced by the admission of certain evidence, and by the way in which the trial judge submitted the question of the damages to the consideration of the jury, and that he should, therefore, have a new trial. The General Term, in affirming

the judgment, have passed upon various points raised by the appellant, and we might well remit the case without further expression of opinion. But some of the questions still insisted upon seem to deserve further consideration from us.

Evidence of the defendant's general reputation as to wealth, at the time of the agreement of marriage, was admitted against the objection to its competency upon the subject of damages in such an action The exception to its admission presents an interesting question, and one which may be deemed not altogether free from difficulty. Such evidence, on first consideration, seems to conflict with the general rule that in actions for a breach of a contract evidence as to the defendant's wealth is inadmissible. The plaintiff, in such actions, is entitled to recover only those damages which he may prove that he has suffered in consequence of the defendant's failure to perform on his part. The defendant's solvency, or insolvency, has nothing to do with the issue, and furnishes no measure for the computation of damages. And this rule of exclusion as to such evidence has been also applied to cases where damages are sought to be recovered for seduction, or for criminal conversation. (*James* v. *Biddington*, 6 Car. & P. 589; *Dain* v. *Wycoff*, 7 N. Y. 191.) Baron ALDERSON, in *James* v. *Biddington*, an action by a husband for criminal conversation with his wife, assigned as the reason for holding such evidence to be improper, that "the plaintiff is entitled to as much damages as a jury thinks is a compensation for the injury he has sustained, and the amount of the defendant's property is not a question in the case" Judge GARDINER, in *Dain* v. *Wycoff*, an action by a father for the seduction of his daughter, reasoned upon the exclusion of proof of what defendant was worth, that the jury should not be allowed "to go beyond the issue between the parties litigating, and after indemnifying the plaintiff for the injury sustained by him, proceed as conservators of the public morals to punish the defendant in a private action for an offense against society." The principle underlying the exclusion of this kind of evidence, in the latter class of cases, is that vindictive, or punitive

damages would be improper; as the recovery in them should be confined to what the jury may deem to be a sufficient compensation for the injury sustained by the plaintiff. But the present action is quite other in its nature, and constitutes an exception to that general rule upon the subject of damages for violation of contract obligations, which has been assented to by the judges of the courts in this country and in England. It is apparent that, in such an action as this, there can be no hard and fast rule of damages, and that they must be left to the discretion of the jury. Of course, that discretion is not so absolute as to be independent of a consideration of the evidence. It is one which is to be exercised with regard to all the circumstances of the particular case, and, as it has frequently been said, where the verdict has not been influenced by prejudice, passion, or corruption, the verdict will not be disturbed by the court. That the amount of the suitor's pecuniary means is a factor of some importance in the case of a demand of marriage cannot fairly be denied. It is a circumstance which, very frequently, must have its particular influence upon the mind of the woman, in determining the question of consent or refusal, and, as I think, in a proper case, very naturally and properly so. The ability of the man to support her in comfort and the station in life, which marriage with him holds forth, are matters which may be weighed, in connection with an agreement to marry.

In the case at bar, the plaintiff was forty-seven years of age and the defendant seventy-four. Six years previously he had sought her acquaintance, unsolicited by her and with matrimonial views on his part. He had visited her more or less frequently, and had twice proposed marriage, before their engagement in 1886. She was and had been supporting herself as a teacher and superintendent in city schools. He had never been married and had lived in the country as a farmer. He was possessed of pecuniary means, considerable in amount in the general estimation of his neighbors, and not inconsiderable if we take his own estimate. Though pretending to some cultivation of mind, which, among other ways, if we may

judge from this record, he seemed to delight in displaying by a versification of the homely, though not very inspiring or romantic, topics and events of his farm life and surrroundings, he yet was, seemingly, lacking in those outward graces of the person, which are not infrequently deemed a substitute for more solid possessions. Nor does he seem to have had recourse to the adventitious aids of the wardrobe, to adorn his exterior person and thereby to compensate for personal shortcomings. I think that the jury should be made aware of all the circumstances which, in this case and in every such case, might be supposed to have presented themselves to the mind of the plaintiff, when asked to change her position by a marriage. Of these circumstances, the home offered, which, for its comforts and ease, would depend upon the more or less ample pecuniary means of the defendant; the freedom from the personal exertions for daily support; the social position accompanying the marriage — all these are facts which have their proper bearing upon the question of marriage. The wealth and the reputation for wealth of a man are matters which, as this world is constituted, often aid in determining his social position, notwithstanding he may have other and more intelligible rights to it, and despite objectionable characteristics or traits.

Where, therefore, the defendant has demanded an engagement of marriage, it seems proper enough that the jury should know what possible re-enforcement his suit may have had and what were the inducements offered by his social standing and surroundings. In the case of *James* v. *Biddington* (*supra*), Baron ALDERSON, while holding it improper to give evidence of the amount of defendant's property, in an action for crimnal conversation, said : " In a case of breach of promise of marriage, the amount of the defendant's property is very material as showing what would have been the station of the plaintiff in society if the defendant had not broken his promise." (And see *Berry* v. *Da Costa*, L. R. [1 C. P.] 331; *Wood* v. *Hurd*, 2 Bing. N. C. 166.) It has been so held in this court and in the courts of other states, to some of whose decisions

the·respondent's brief has directed our attention. (*Kniffen* v.
*McConnell*, 30 N. Y. 285 ; *Lawrence* v. *Cooke*, 56 Maine, 187;
*Bennett* v. *Beam*, 42 Mich. 346 ; *Allen* v. *Baker*, 86 N. C.
91.) In Mayne on Damages (Wood's ed.), § 677, upon the
strength of the English authorities I have cited, the same rule ·
is given. I apprehend, however, that the difficulty in the
question before us of the evidence is not so much in adducing
proof as to defendant's pecuniary means, as in the mode of
their proof. But, assuming, as I think we are bound to do
under the authorities, that the amount of defendant's property
is material in such an action, then evidence of the reputation
which he enjoys for wealth is unobjectionable. Reputation is
the common knowledge of the community, and if it is exag-
gerated, or incorrect, the defendant has the opportunity to
correct it and of giving the exact facts, upon the trial. The
admission of the evidence is not to establish an ability to pay,
but to show the social standing which defendant's means did,
or might command.

In *Kniffen* v. *McConnell* (30 N. Y. 289), which was an
action for a breach of promise of marriage, Judge INGRAHAM,
delivering the opinion for the court, held that : "It may be
objectionable to particularize the defendant's property, and
such evidence should be confined to general reputation as to
the circumstances of the defendant. To that extent I think it
admissible." The learned judge does not reason upon the
rule, but I am not aware that this decision has ever been ques-
tioned, and I do not think it well can be.

In *Kerfoot* v. *Marsden* (2 Foster & Finlason's Nisi Prius
Reports, 160), an action for breach of promise of marriage, in
1860, WILDE, B., ruled : "You may ask in a general way as
to the defendant's property, but you cannot go into particular
items as to his property."

I think we must conclude, upon authority as well as upon
the reason of the thing, that evidence of the reputation of the
defendant as to wealth is admissible in these cases. The belief
of the plaintiff must have been influenced by the opinions, or
beliefs, of the members of the community in which the defend-

ant resided. She could not be presumed to have personal cognizance of a matter, which is so peculiarly one within the individual's exclusive knowledge, and what credence she gave to general report was not without justification. She had some right to rely upon it.

The action is intended as an indemnity for the temporal loss which the plaintiff has sustained, and that embraces the mortification to the feelings, the wounded pride and all the disappointments from the failure of marriage, as well in the losses it has occasioned as in the blow to the affections.

The appellant insists upon the error of the trial judge in submitting to the jury the question of exemplary damages. But we think, in such a case, that it is the province of the jury to determine, upon the proof of the facts and of the surrounding circumstances, what damages should be awarded. If the conduct of the defendant in violating his promise is characterized by a disregard of the plaintiff's feelings, or reputation; if he has placed her, or induced her to place herself, in a false position, or to forego temporal advantages; if the breach of his promise is unjustifiable ; if he spreads upon the record matters in defense of the action which are scandalous and tend to reflect discredit upon the plaintiff, or stain her reputation, then these are all circumstances, which may be considered by the jury and may be availed of by them to enhance the damages. Here the trial judge did not say in his charge that this was a case for the infliction of punitive damages. He instructed the jury, in substance, that if the plaintiff was entitled to damages they should certainly give compensatory damages, and that in the exercise of their discretion, based on the proofs and circumstances of the case, they might award exemplary or punitive damages. Upon this subject, of when such damages might be awarded, he read at length from the opinions of this court in *Thorn* v. *Knapp* (42 N. Y. 474), and *Johnson* v. *Jenkins* (24 id. 252), for the purpose of showing the rule to be applied. It is clear that he left it to them to arrive at a decision upon the propriety of giving exemplary damages from a consideration of the defendant's motives and conduct. Now

there was evidence in the case upon which a verdict might well include exemplary damages. The wedding day was agreed upon, the usual preparations were made by the plaintiff, and relatives and guests were bidden to the ceremony. But the defendant did not appear. He alleged physical ailments in excuse of not fulfilling his marital engagement; but there was evidence that he was evading it and shamming illness. He admits that he had no fault to find with her. She had resigned her position to marry him. He denies requesting her to do so, but his attempt at denial is weakened by his subsequent admission that he expected her to do it. Then, in his pleading, he charges the plaintiff with having no affection for him, but with entertaining a purpose to procure money from him on the pretense of his promise to marry her and his breach thereof. These were elements in the case, which might properly enter into the decision of the jury as to the amount of damages.

The appellant alleges another error in the charge when the trial judge instructed the jury "in fixing the amount (of damages), the plaintiff is entitled at least to such damages as would place her in as good pecuniary condition as she would have been if the contract had been fulfilled." This was, of course, a careless use of language, but it could not have prejudiced the defendant's case. It was very plain from all the charge, in what preceded as in what immediately followed the sentence picked out for objection, that the trial judge intended to and did instruct his jury that they should compensate the plaintiff for what she had lost and was deprived of by the failure of the marriage. They might affix to the marriage with the defendant that pecuniary value which, in their judgment, upon all the circumstances of the case, it would have to the plaintiff. The jury could not reasonably have understood the judge otherwise. It may often occur in a charge to the jury that particular words, or expressions used, when taken by themselves, will be objectionable, or seem to be erroneous, but they should not be considered independently of contextual phrases. If, when read in connection with the rest of the charge, the sense of

language used is made clear and its meaning explained, and the instruction is not uncertain as to the subject-matter, the result of the trial should not be disturbed for mere inaccuracies or carelessness in speech.

There is no occasion for a further discussion of any questions, and the judgment and order appealed from should be affirmed with costs.

All concur, except EARL and PECKHAM, JJ., who dissent on the ground that it was error to receive proof of the defendant's wealth by reputation.

Judgment affirmed.