## WOLTERS v. SCHULTZ.

### (City Court of New York, General Term. January 4, 1893.)

BREACH OF PROMISE OF MARRIAGE—EXCESSIVE DAMAGES.

Plaintiff first met defendant as a customer in her father's store. In seven weeks they became engaged to be married, the wedding to take place in a very short time, on a day fixed. Defendant failed to keep his engagement, and afterwards proposed an unlawful alliance with her. It appeared that she knew during their courtship that he sustained a like relation with another woman. *Held,* that a verdict for $25,000 damages, being about one sixth of his admitted fortune, was excessive. Newburger, J., dissenting.

Appeal from trial term.

Action by Georgine C. Wolters against Louis Schultz for breach of promise of marriage. Judgment for plaintiff. Defendant appeals. Reversed.

Argued before EHRLICH, C. J., and NEWBURGER and McCARTHY, JJ.

Campbell & Murphy, (David Leventritt and Geo. H. Yeaman, of counsel,) for appellant.

George W. Gibbons, (Isaac L. Egbert, John C. Sheehan, and Edward Browne, of counsel,) for respondent.

EHRLICH, C. J. A patient examination of the record has satisfied the conscience of the court that the appeal should prevail; and, to avoid misapprehension, we place our decision distinctly upon the ground that a review of the facts inspires the belief that the interests of justice require the remanding of the cause to another jury. In this and all like cases, the jury is the primary, and must be the final, arbiter of damages; but to us the power is intrusted, and upon us is enjoined the duty of reviewing verdicts which are challenged by appeal. We must proceed with deliberate caution in the interests of justice; but we should act with resolute vigor when convinced that the verdict (whether plainly excessive or clearly inadequate) must have been illegally influenced, and we are so convinced in the case at bar. Assuming, as we are bound to do, the substantial correctness of plaintiff's testimony, early in February, 1891, she first met defendant as a customer in her father's cigar store, she being then about 31 years of age, and acting occasionally as a clerk therein.

Seven weeks later a marriage engagement had been entered into with defendant, and the wedding day fixed for the 21st of June following. Defendant declined or failed to keep the engagement, and this action promptly followed, resulting in a verdict against him for $25,000, this sum being about one sixth of his admitted fortune. The brief length of the acquaintance before the engagement, the short duration of the engagement itself, and the absence of all evidence tending to show malice, brutality, or other wickedness of defendant in the making or breaking of the contract, or during its existence, sufficiently negative the legal propriety of the verdict rendered. The only testimony in the record that would seem to justify punitive damages is that of plaintiff to the effect that, after defendant had refused to consummate the marriage engagement, he proposed an unlawful alliance with her; but since her knowledge that during the courtship he was sustaining a like relation to another person did not shake her confidence in him, nor diminish her respect or love for him or her desire to marry him, it is inconceivable that the indecent proposal alleged should have wounded her sensibilities to an extent that would justify the verdict; nor, standing alone, would this evidence be sufficient to support a finding that defendant never intended to marry plaintiff, but deliberately proposed to deceive her.

A new trial being necessary, it would be idle to review in detail the various rulings questioned by appellant's exceptions; but a brief statement of our views as to damages in actions of this nature will cover many of these rulings, and may guide any future trial of this, or other similar actions. Whenever it is proved that a defendant has wrongfully broken his promise to marry plaintiff, without fault on her part, the law requires, and the jury must award, a recovery of damages. These damages should include: (a) All expenses justly incurred upon faith of the violated contract and by reason thereof, and all pecuniary loss directly caused thereby. (b) A sum sufficient, in the discretion of the jury, calmly and judicially exercised, to vindicate plaintiff's character. (c) In case defendant is shown to have acted maliciously, unfeelingly, or with evil or dishonest intention, a further award of damages must be made, sufficient to be a punishment to defendant and a warning to others, and thus a safeguard to society. The element of damage first mentioned is usually trifling in amount; in the case at bar, a few hundred dollars is mentioned as its limit. The jury must be allowed to estimate the supposed money value to plaintiff of the marriage contract. The relation which an engagement contemplates lies at the foundation of social order. The obligation it imposes, and the rights it assures, are mutual and reciprocal. It holds forth the promise of benefits and blessings which can never be tested by a money standard. Therefore it is not to be tolerated that a jury should ever be allowed to speculate upon the net money value to a plaintiff of a violated marriage agreement. Beyond the immediate pecuniary loss, we think that all other damage to which plaintiff herself is entitled may be referred to her proper vindication, in view of all the facts and circumstances attending the contract, and the violation thereof on defendant's part. It is true that the authorities declare that plaintiff should have some indemnity or compensa-

tion for the disappointment of her expectations, her wounded feelings, her mortification, and the harm done to her worldly prospects; but we think the meaning of these expressions is fully satisfied when the jury shall be allowed, under proper instructions, to take them into consideration in estimating and fixing a sum which shall properly express the vindication to which she is deemed entitled. It must not be understood that disappointed hopes and mental suffering shall have no weight in fixing the damages, but in no just sense can there be compensation for an injured name or a wounded spirit. The law abhors any attempted traffic in character or in suffering, and no conceivable standard of their money value has ever been set up. But, as to this element of damage, in fairness it must be said that, whenever a man unjustly spurns the hand of a woman which he had won in promised marriage, by the act itself he makes a thrust at her character; in the eyes of her relatives and acquaintances she is in a measure dishonored, even though he has been guilty of no open slander. To make a proper award of damages, the jury should scan and weigh the words and acts, and thereby ascertain the leading motives of both parties. It may consider their social standing, family relations, worldly fortunes, extent and duration of intimacy, length of courtship, and the degree or lack of culture, refinement, and delicate sensibility possessed by each, and the manifestation of the same in their conduct towards, and intercourse with, each other. If a plaintiff enters into a marriage engagement from mercenary motives only, she may still recover, if she intended and was willing to carry out the agreement; but in such event the damage should not exceed the actual pecuniary loss or outlay, since disappointed love of defendant's money furnishes no ground of legal redress, and she could not justly complain that defendant's conception of the contract or his standard of duty was not higher than her own. Whatever harm to plaintiff's prospects in life has been caused by the nonfulfillment of the contract can only be estimated and remedied by courts and juries by way of vindication of her character, in view of all the attendant circumstances. The same is true as to her wounded feelings and mental suffering. These, when properly established to the satisfaction of the jury, fairly indicate serious injury to plaintiff's good name, for they show that plaintiff herself valued it. Vindictive damages should not be awarded upon proof that is doubtful or unconvincing, and only upon evidence of malicious or unfeeling conduct or evil intention on the part of the defendant. It is true that marriage contracts are favorites of the law; but this alone will not justify an award of punitive damage. In reaching their conclusion the jury may take into consideration plaintiff's previous social standing and pecuniary circumstances, but not with a view of carving out of defendant's estate a sum sufficient either to improve or maintain such condition; they should consider these matters with reference to their bearing upon the injury which plaintiff has suffered, and the sum which may properly be awarded by way of fair reparation and just vindication. The amount of defendant's worldly resources may be considered. It is plain that a verdict of a few hundred dollars against one defendant might sufficiently vindicate a plaintiff, and also adequately punish the wrongdoer, while in another case a like

verdict would amount practically to no redress whatever, and as a supposed penalty would excite derision. It is self-evident that the jury's task in a case like the present is equally difficult and delicate. Specific instructions covering every possible question that may arise cannot well be formulated. The objects to be sought should be carefully set forth, but the particular weight to be given to each item or element of damage alleged must be left to the sound discretion and judicial temper of the jury itself. The views herein expressed, it is believed, are as precise as the nature of the questions permits, and may sufficiently cover the principal matters likely to arise upon another trial, which is hereby ordered, with costs to appellant to abide the event.

McCARTHY, J. I concur. The damages were excessive, and the jury do not appear to have been free from passion or prejudice.

NEWBURGER, J., (dissenting.) This is an action for breach of promise of marriage. The jury returned a verdict of $25,000 for the plaintiff. Sufficient evidence was given at the trial to establish the contract between the parties, and the breach thereof by the defendant. It is contended by the defendant that the court erred in submitting to the jury the question of exemplary damages. In the course of the charge the learned trial judge said:

"In an ordinary action for the violation of a contract, a person is simply entitled to the money damage which he suffers, but the courts have decided that that rule of law does not apply to actions of this character. If you should believe, for instance, in this case, that the defendant with evil mind and motive violated the promise of marriage, then you would have the right to give vindictive damages, for the reason that has been stated in the language of the court of appeals, as a punishment to the defendant for the violation of a contract of this high character. That is the law, gentlemen, in case you find the plaintiff entitled to a verdict, and in case you believe there was a promise to marry, and that with evil mind and motive he broke the promise."

After referring to the defendant's pecuniary standing he added:

"Before you can render a verdict in favor of the plaintiff you must be convinced by the weight of evidence that there was a promise to marry, and that defendant violated that promise. In case you determine that question affirmatively, the next question for you to determine will be that of damages, and in that connection you have the right to take into consideration all the surrounding facts, circumstances, and actions of the parties, for the purpose of determining whether or not the defendant broke that promise with evil mind and motive. If you believe that he did break that promise with evil mind and motive, then I charge you that you have the right to give vindictive damages to the plaintiff, not so much as compensation to her, as the court of appeals has stated, but by way of punishment to the defendant; but in no event can the verdict exceed the amount asked for in this case, which is the sum of $50,000. In conjunction with the financial standing of the defendant, if you determine that the plaintiff is entitled to a verdict you may also consider, in case you determine that there were any elements of that character in the case, the mortification which the plaintiff suffered in consequence of this refusal by the defendant to carry out the promise to marry, her disappointment, her wounded feelings, and the injury to her future prospects. All of those things are elements which may enter into the case for the purpose of fixing the amount of damages that the plaintiff is entitled to, in case you determine that she is entitled to a verdict at all."

The question of damages, compensatory and vindictive, was properly and clearly submitted to the jury by the learned trial judge. **Hunt v.**

Bennett, 19 N. Y. 173; Johnson v. Jenkins, 24 N. Y. 252; Thorn v. Knapp, 42 N. Y. 477; Chellis v. Chapman, 125 N. Y. 214, 26 N. E. Rep. 308.

I do not think the damages given by the jury are excessive. The action is intended as an indemnity for the temporal loss which the plaintiff has suffered, and that embraces the injury to the feelings, the wounded pride, and all the disappointments resulting from the failure of marriage, as well as in the losses it has occasioned. From the nature of the case it has been found impossible to fix the amount of compensation by any precise rule, and the measure of damages is a question for the sound discretion of the jury, subject, of course, to the general restriction that a verdict influenced by prejudice, passion, or corruption will not be allowed to stand. Of course, that discretion is not so absolute as to be independent of a consideration of the evidence. That the amount of defendant's pecuniary means is a factor of some importance is a circumstance which the jury may find has its influence upon the mind of the woman in determining the question of consent or refusal. The ability of the man to support her in comfort, and the station of life which marriage with him holds forth, are matters which may be weighed in connection with an agreement to marry. According to the plaintiff's testimony, defendant stated to her, on one occasion, that he was worth the sum of $250,000, while the defendant admitted on the trial that he was worth at that time $140,000. The verdict, therefore, cannot be deemed excessive. In Chellis v. Chapman, 125 N. Y. 214, 26 N. E. Rep. 308, plaintiff, a school teacher 46 years of age, sued the defendant, a farmer, for breach of promise of marriage. There was no evidence of the defendant's financial reputation, except the general statement that he was wealthy. A verdict of $8,000 was held not to be excessive. In Campbell v. Arbuckle, (Sup.) 4 N. Y. Supp. 29, affirmed by the court of appeals, (26 N. E. Rep. 750,) a verdict of $45,-000 was also held not to be excessive. In Minick v. City of Troy, 19 Hun, 258, Bockes, J., said:

"The question of damages was within the proper and peculiar province of the jury. It rested on their sound discretion, under all the circumstances of the case, and unless the damages are so outrageous as to strike every one with the enormity and injustice of them, and so as to induce the court to believe that the jury must have acted from prejudice, partiality, or corruption, we cannot, consistently with the precedents, interfere with the verdict. It is not enough to show that in the opinion of the court the damages are high, and that we would have given much less. It is the judgment of the jury, not the judgment of the court, which is to assess damages in actions for personal torts and injuries."

A careful examination of the appeal book, and of the authorities above referred to, leads me to the opinion that the verdict was not excessive, and the judgment should not be interfered with. For these reasons, the judgment appealed from should be affirmed, with costs.