IDA E. SMITH, PLAINTIFF BELOW, DEFENDANT IN ERROR, v. CHARLES W. COMPTON, DEFENDANT BELOW, PLAINTIFF IN ERROR.

Argued March 6, 1902—Decided June 16, 1902.

1. Nothing will excuse the defendant for the breach of promise of marriage except such a disease or complication of diseases as renders the making of the marriage contract and the consummation of the marriage by marital intercourse impossible.

2. It is competent in an action for breach of promise of marriage to prove the pecuniary circumstances of the defendant, but it must be proven by evidence of general reputation; it is not admissible to prove his ownership of specific property. The defendant may rebut this evidence by showing that the general reputation is otherwise, or by showing what property he is really possessed of.

3. When the declaration alleges as a ground of special damages the loss of a valuable right of dower in defendant's property, evidence of defendant's ownership of specific property may be offered by the plaintiff.

On error to the Supreme Court.

For the plaintiff in error, *Egbert J. Tamblin* and *Robert H. McCarter.*

For the defendant in error, *Riker & Riker.*

The opinion of the court was delivered by

VAN SYCKEL, J. The writ of error in this case is brought to review a judgment of $7,500 recovered by the plaintiff for breach of a contract of marriage.

The contract was not denied. The alleged infirmity in the proceedings below is based upon exceptions to the charge of the trial court and to the admission of evidence offered by the plaintiff.

The exceptions will be considered in the order in which they have been presented by the counsel of the defendant.

The defendant pleaded the general issue, and gave notice, in writing, to the plaintiff, under section 116 of the Practice act (*Gen. Stat., p.* 2552), that he would interpose the following defences under his plea of general issue:

1. The defendant will deny the making of the contract mentioned in the declaration filed in this cause.

2. If it shall be established that the said defendant made the contract mentioned in the declaration herein, the said defendant will insist that subsequently thereto said defendant discovered that the said plaintiff was not a proper person for him to marry on account of her character, and thereupon said defendant rescinded said contract.

3. If it shall be established that said defendant made the contract mentioned in the declaration herein, the said defendant will insist that subsequently thereto the said defendant became physically ill and infirm, whereby he was rendered incapable, without imminent hazard to his life, to execute or consummate said alleged contract.

1. The court refused the defendant's request to charge the jury that if after the making of the promise to marry the plaintiff, but before the day named for the consummation of the marriage, the defendant, without his fault, contracted or developed a urinary or other disease, which kept him under the treatment of a physician, and which would be aggravated by sexual intercourse and hazardous to his health, such malady was a complete defence to the plaintiff's action for breach of promise.

The charge of the court was "that nothing will excuse the defendant for the breach of his promise, except such a disease or complication of diseases as renders the making of the marriage contract and the consummation of the marriage by marital intercourse impossible.

"For instance, a man may, upon the day fixed for his wedding, be stretched upon his bed in the delirium of fever; under such circumstances it will be no breach of his contract if he failed to perform it on that day. So he might conceivably, without fault on his part, be in such a physical state that, while able to go through a marriage ceremony, it might be impossible for him to consummate the marriage by marital intercourse. Where such an impossibility exists, there would be a good defence to an action for failure to perform upon the day fixed; and if the impossibility of going through the marriage ceremony became permanent, as in a case of incurable insanity, or the impossibility of consummating the marriage became permanent, as in a case of incurable impotency, there would be a valid defence to any action whatever for breach of promise. Such an impossibility is not alleged or proved in this case. The extent to which the evidence for the defence goes is that the consummation of the marriage would be attended with imminent hazard to the

defendant's life. However unfortunate that may be for the defendant, assuming it to be true, it is no defence to this action. The defendant has made the contract; he has failed to perform it; he must pay the damages for that failure. Contracts the performance of which involves imminent hazard to life are not infrequent; no one would think of excusing a locomotive engineer or the captain of a ship from the performance of his duty because of an unexpected danger to his life in the performance."

It is undeniably the general rule that if a party enter into an absolute contract without any qualification or exception, he must abide by the contract, and either do the act or pay the damages. *Rosenbaum* v. *United States Credit System Co.,* 35 *Vroom* 34.

In *School Trustees* v. *Bennett, 3 Dutcher* 513, Mr. Justice Whelpley says: "No matter how harsh and apparently unjust in its operation the rule may occasionally be, it cannot be denied that it has its foundation in good sense and inflexible honesty. He that agrees to do an act should do it, unless absolutely impossible. He should provide against contingencies in his contract."

This question is elaborately discussed in the opinion of Mr. Justice Depue in the recent case (in this court) of *Middlesex Water Co.* v. *Knappmann Whiting Co., 35 Vroom* 240, and the general rule is declared to be, in accordance with the cases of *Paradine* v. *Jane, Aleyn* 26, and *Trustees* v. *Bennett, 3 Dutcher* 520, that where the contract is express to do a thing not unlawful, the contractor must perform it, and if by some unforeseen accident the performance is prevented, he must pay damages for not doing it. "No distinction is made between accidents that could be foreseen when the contract was entered into, and those that could not have been forseen."

This firmly-settled rule must be applied to contracts of marriage, unless it can be shown that such engagements are exceptions to the general rule.

This question has been the subject of much discussion in the courts of different jurisdictions, which has resulted in great diversity of opinion.

In *Shakleford* v. *Hamilton* (*Ky.*), 196 *S. W. Rep.* 5, and in *Allen* v. *Baker,* 86 *N. C.* 91, the defendant successfully set up in bar of an action for breach of promise to marry that he was afflicted with a venereal disease, which rendered him unfit for the married state, without disclaiming any fault on his own part.

To these cases I am unwilling to give my assent, as I conceive that such a defence is excluded by the well-settled rule that no one can claim to be absolved from the performance of his obligation by reason of his own immoral conduct, or his own turpitude, where the other party has not participated in it. Where both parties are in complicity in an illegal act, or an act of turpitude, the court will not listen to a controversy between them, founded upon it, but will leave them in the position in which they have placed themselves. Where a party offers to set up in his own defence his own immoral conduct, the court will not permit it.

In my judgment it would be more in accordance with correct legal principle to hold that the plaintiff would be entitled to refuse to marry him, and treat his condition as a breach of his contract.

The cases which hold that the defendant's physical condition in cases of insanity or incurable impotency can be successfully interposed as a bar, have no relation to this controversy.

No such condition was in evidence, and if it had been, the charge of the court recognized it as a good defence.

The case of *Saunders* v. *Coleman* (*Va.*), 34 *S. E. Rep.* 621, is more liberal to the defendant, and lays down the rule that where the defendant, after the promise, contracts or develops a disease, without fault on his part, which renders it unsafe and dangerous to his health or life to perform his contract, it will constitute a defence to an action against him.

On the contrary, *Hall* v. *Wright,* 96 *Eng. Com. L.* 746, maintains that such physical defects cannot be set up in bar to the action.

In the case under consideration the declaration alleges that the promise made was to marry on the 15th day of June,

1900, and both the plaintiff and defendant admit that such was the promise.

It was incumbent on the plaintiff to prove, not only the promise, but also the breach to support the action. The promise being admitted, and the refusal to perform at the stipulated time being also admitted, the plaintiff clearly established her right of action.

In the case of Hall *v.* Wright, the promise counted upon being to marry within a reasonable time, it might, with some plausibility, be argued that the defendant's physical condition might be considered in determining whether a reasonable time had elapsed, and if it had not, there would be no breach proven, and the right of action would not exist. Some of the judges commented upon that feature of the case, which is not present here.

The plea and notice set up an absolute bar to the action; the notice to which, by the express provision of the statute, the defendant is confined, does not set up that the defendant recognized the continued existence of the contract, binding him to perform when his disability was removed and that he was ready to do so, and therefore the right to postpone as a substantive defence and bar to the action cannot be considered. The requests to charge in that respect were aside from the issue made by the pleadings, and were properly refused.

Whether the defendant was entitled to have the damages mitigated upon that evidence which was admitted by the trial court is a different question.

The contract was entered into, and there was a breach of it, and the only question is whether, as the court below charged, the plaintiff was entitled to some damages.

This is not a duty or a charge created by law, which the party is disabled to perform without any fault on his own part, but a contract entered into by himself, in which he might have provided against the contingency which he alleges has occurred.

The contract is an unconditional one, into which the defendant cannot read a condition which will defeat it. I agree

with the declaration of the majority of the judges in Hall *v.* Wright, that it is not enough to show, in answer to an action upon the contract after breach, that its performance is inconvenient or may be dangerous; impossibility to perform will alone constitute an absolute bar. Ill health is the defendant's misfortune, not to be visited, beyond what is inevitable, upon the plaintiff. If the plaintiff was willing, in view of his social position, or that which she might acquire by reason of his wealth, to marry him, and await his restoration to health, she had the right to insist upon the benefit of the unconditional contract. If he was apprehensive of danger to his health or life, he could break the engagement, but was subject to such damages as a jury would award against him for the breach. That would, in effect, be a substituted performance in discharge of the obligation incurred. This is in consonance with the well-established rule which governs contracts, and, unless it is adhered to, the loss falls upon the party to whom no fault can be imputed.

In this respect there was no error in the charge of the trial court.

Several requests were made to charge in respect to the mitigation of damages, but the only ones in respect to which error is assigned for the refusal to charge are as follows:

(1) That the court refused to charge the jury "if the jury believe that the defendant postponed the wedding because of his impaired condition of health, then no damages beyond actual compensation can be recovered."

(2) That the court refused to charge the jury that "even if the jury believe that the postponement or delay or refusal of the defendant to marry the plaintiff was due to the fact that the defendant felt that his obligation to his sisters was such as to make the marriage improper, the same should be considered in mitigation of damages."

It would manifestly have been error to charge the latter request.

The rights of the plaintiff, under the contract, could not be defeated or impaired by any obligation the defendant, with-

out any intervention on the part of the plaintiff, had assumed toward others.

· Upon the question of mitigation the court charged the jury as follows:

"While the defendant therefore must pay some damages for the admitted breach of contract, the amount which he ought to pay depends very much upon the circumstances of the case; and the testimony as to his physical condition ought to be carefully considered.

"He says his condition was such, in June, 1900, that marriage at that time would have been hazardous to his life, and that all he asked of the plaintiff was a postponement of the marriage until his health would permit him to marry with safety; and he says that he regarded the engagement as subsisting up to the time this suit was brought.

"If the evidence convinces you that that is the situation, if you believe that the defendant merely sought a postponement in good faith until a more convenient season, and that a reasonable woman would have consented to such postponement, and especially if you believe that, when this suit was brought, in September last, the defendant still regarded the engagement as subsisting, and was still ready and willing to marry the plaintiff at a suitable time, then the damages you award the plaintiff for the technical breach of contract ought to be very small, perhaps even nominal only."

The defendant surely has no right to complain that this charge was not sufficiently favorable to him.

2. Before the opening by the plaintiff of her case to the court and the jury the specifications of defence had not been filed. Before the trial the counsel of plaintiff was informed by the defendant's counsel that the second specification of defence, that the plaintiff was not a proper person for him to marry on account of her character was not, and would not, be relied on.

After this notice the plaintiff's counsel put the specifications of defence upon file in the clerk's office, and was permitted, under exception by defendant, to offer then in evidence on the trial in aggravation of damages.

This evidence was properly admitted; it had a tendency to humiliate the plaintiff in the estimation of her counsel, to whom the specifications were delivered, and made it necessary for her, in preparing for trial, to inform witnesses on her own behalf that her character would be attacked.

The trial judge properly limited the effect of these specifications by charging the jury "that the specifications were no part of the record in the case, and need not be filed with the clerk. But, notwithstanding that fact, you would have the right to award increased damages by reason of this proposed attack upon the plaintiff's character, which had been abandoned. * * * While you have the right to award such additional damages, before you do so, you should consider how the plaintiff herself, or her counsel, has treated this paper. Ordinarily it would be seen only by the plaintiff or her counsel; no further publicity need be given to it, except so far as the proposed defence may have made it necessary for the plaintiff to call witnesses to prove her good character. In this case the plaintiff herself, through her counsel, as has been admitted, has chosen to file this paper with the clerk, as one of the papers in the cause, upon the very day this trial began, and after notice that no attempt would be made to follow up the charge by evidence.

"It will be for you to say, under these circumstances, whether the plaintiff has felt that sense of outrage which a woman naturally feels, and for which she ought to be compensated, or whether she has sought to magnify her own damage. That question I leave entirely to you."

3. It is not denied that proof of the defendant's wealth and circumstances is competent in action for breach of promise of marriage, but it is denied that it is admissible to prove it otherwise than by general reputation.

The defendant alleges, for legal error in the trial, that evidence was admitted to show that the defendant owned certain pieces of real estate.

*Clark* v. *Hodges,* 65 *Vt.* 273, and *Rime* v. *Rater,* 78 *N. W. Rep.* 835, an Iowa case, support the admission of proof of the ownership of specific property.

But the weight of the authority is otherwise. *Kerfoot* v. *Marsden,* 2. *Fost. & F.* 160; *Kniffen* v. *McConnell,* 30 *N. Y.* 285; *Stratton* v. *Dale,* 63 *N. W. Rep.* 875; *Challis* v. *Chapman,* 125 *N. Y.* 214.

In the case last cited the court said: "Reputation is the common knowledge of the community, and if exaggerated or incorrect the defendant has the opportunity to correct it and of giving the exact facts upon the trial.

"The admission of the evidence is not to establish an ability to pay, but to show the social standing which the defendant's means did, or might, command."

It is in principle like those cases in which it is competent to attack character, it must be done by proof of general reputation, and cannot be done by proving particular instances of misconduct, because a party having no notice of such an attack could not be prepared to meet it. In cases where character may be assailed, he must be prepared to support his general reputation for good character.

The court, in this case, allowed the plaintiff to put in evidence the value of specific tracts of lands owned by the defendant, and conveyed by him to his sisters shortly before the date set for the marriage.

This evidence was admissible to show bad faith on the part of the defendant; that he intended to break his contract, and to contradict the truthfulness of his specification of defence that his failure to comply with his engagement was in consequence of his physical condition.

In the absence of the attempt to denude himself of his property, the evidence would have been inadmissible.

The defendant was asked, on cross-examination, as to his life insurance policies, and he said, "I have no life insurance now, excepting what you call societies."

No amount was stated by him, and the question and answer, if incompetent, was not detrimental to the defence.

The defendant may rebut evidence of general reputation, as to his pecuniary circumstances, by showing that the general reputation is otherwise, or by showing what property he is really possessed of.

When the declaration alleges, as a ground of special damages, the loss of a valuable right of dower in the defendant's property, evidence of the defendant's ownership of specific property may be given by the plaintiff. There was no legal error in the trial below, and judgment should therefore be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, DIXON, GARRISON, FORT, GARRETSON, PITNEY, BOGERT, KRUEGER, ADAMS, VREDENBURGH, VOORHEES, VROOM. 14.

*For reversal*—COLLINS, HENDRICKSON. 2.