John C. RANDAZZO, Appellant,

v.

Phyllis POLIZZI, Respondent.

No. 49338.

Supreme Court of Missouri,

Division No. 1.

April 8, 1963.

Rosenblum & Goldenhersh, St. Louis, Emanuel Shapiro, Clayton, for appellant.

Alexander & Robertson, L. A. Robertson and Leo C. De Voto, Jr., St. Louis, for respondent.

HOUSER, Commissioner.

Action for $25,000 damages for personal injuries. Jury verdict for defendant. Plaintiff appealed from the ensuing judgment.

Plaintiff claimed his jaw was broken as the result of a fall on an unsafe common stairway on defendant's premises. Plaintiff and his family, tenants in defendant's building, had lived there for 17 or 18 years. Plaintiff testified that he started to work on the night shift, and while descending a 30-inch-wide outside wooden stairway at 11 o'clock on an evening in early October, 1958 he stepped on a loose wooden tread, which moved or "flipped" and caused him to lose his balance; that he grabbed for the bannister on the left, but the bannister gave way and broke loose, causing him to fall down the stairs and strike his left jaw on a brick column near the foot of the stairs.

There is no question that plaintiff's jaw was broken, but the case was defended on the principal ground that his jaw was not broken by a fall on the stairs; that plaintiff's case was a fraud "from the word 'go'"; that plaintiff's account of what happened was unbelievable. Defendant also pleaded and submitted the defense of contributory negligence.

On this appeal plaintiff claims he was prejudiced by defense counsel's argument to the jury, comments in the presence of the jury, and by his cross-examination of plaintiff.

*Alleged Improper Argument*

In argument to the jury, after referring to the instruction on credibility of witnesses, defense counsel said: "How do you determine whether a witness has told the truth or not? Mr. Silverstein [plaintiff's counsel] has taken issue with me that I have checked on poor John Randazzo. John Randazzo has worked there some thirty years in a business that's not known for its niceties—down on Produce Row—

"Mr. SILVERSTEIN: I object—

"Mr. DEVOTO: (continuing) And I know whereof I speak. My father was down there for twenty-two years.

"Mr. SILVERSTEIN: I object to that, Court please. I think it's improper. I ask that Mr. DeVoto be cautioned not to comment on that, and ask that it be stricken and a mistrial be declared.

"THE COURT: I'll sustain the objection. It will be stricken and the jury will disregard it. Mr. DeVoto, you will confine yourself to the issues."

Plaintiff considers this was an argument that plaintiff "was in a business known for dishonesty." While this does not follow, the argument was outside the issues and evidence and was improper. The court, however, promptly sustained the objection made by plaintiff's counsel, struck it from

the record, admonished the jury to disregard it, and admonished counsel. Plaintiff was given all the relief requested, except a mistrial. Whether this improper argument constituted sufficient ground for a mistrial was a matter of discretion. We find no abuse of discretion in the failure of the court to sustain the motion for a mistrial.

### Alleged Improper Cross-Examination

■■ Plaintiff claims the court erred in permitting cross-examination with reference to cutting open some cabbage sacks. (His duties as a produce salesman sometimes required him to rip open crates, a sack of potatoes, or a package to show to a potential customer.)

Plaintiff was hurt on or about October 9, 1958. He testified he went back to work in six weeks, but at first was merely "around the place, and just watching everything went on the way it was supposed to"; that he was not doing any kind of heavy work until *February or March, 1959.* In order to show that plaintiff's disability had not lasted that long, defendant's counsel, who knew of a police report indicating that as early as January 8 or 9 plaintiff had been doing hard work on the job, asked plaintiff this question: "I'll ask you specifically if you were ripping open any cabbage sacks with a knife on January 8, 1959 in front of No. 27 Produce Row?" An objection on the ground of immateriality was overruled and plaintiff admitted that he "was probably around the store, yes" but testified that he wasn't well enough because of his jaw to do any work that required exercise such as ripping open heavy sacks. Later, in defendant's case, defendant's counsel placed a uniformed officer on the stand and inquired of the officer concerning "the record of an incident involving John Randazzo." Plaintiff's counsel objected and moved for a mistrial on the ground that this statement by defendant's counsel gave the jury the impression that plaintiff was involved in a police incident, and that this was an improper method of impeachment. When the

court overruled, a further objection was made that this was an attempt to impeach plaintiff on a collateral matter, as to which defendant was bound by plaintiff's answer. Defendant's counsel argued that it was not a collateral matter, but went directly to the issue of damages. The report involved an investigation of an incident in which John Randazzo was accused of stabbing another. It resulted in disturbance of the peace charges, later dismissed. Counsel agreed that the only material matter in the report was its recital that on January 8, 1959 John Randazzo made a statement that he was cutting open some cabbage in front of No. 27 Produce Row at 4:50 a. m., and that this portion only of the police report be read to the jury. Pursuant to the agreement defense counsel read only the portion agreed upon, but he prefaced it with the following statement: "It has been stipulated and agreed between counsel for plaintiff and myself in this police report involving John Randazzo, * * *." Plaintiff's counsel moved for a mistrial because of the reference to a police report involving John Randazzo. The motion was overruled.

The court did not err in this respect. The cross-examination was relevant on the issue of damages. Plaintiff, having claimed that he was unable to perform hard work prior to February or March, was properly interrogated as to his performance of hard work in early January. This was not a collateral matter. Having denied that he did hard work that early in the progress of his recovery, it was competent to impeach his denial by the prior inconsistent statement given the police. Defense counsel's reference to "an incident involving John Randazzo," and "this police report involving John Randazzo," do not justify appellant's conclusion that the jury would thereby infer that plaintiff was "some kind of a police character, with a police record." For one to have been involved in an incident concerning which a police report is made does not mean that he was the subject of the police investigation. Nothing revealed to the jury indicated that plaintiff

was being investigated. The part of the report which might have been regarded as prejudicial (about the stabbing and peace disturbance charges) was not read to the jury. The part read to the jury was innocuous and nonprejudicial.

■ Appellant argues that testimony that he was not ripping open "cabbage sacks" was not impeached by a report that he was cutting open "some cabbage," but this exercise in semantics is insubstantial. Appellant further contends that the proof of the statement by calling to the stand the uniformed officer in charge of the record room had a "devastating effect" upon the jury, and that any probative effect of the officer's testimony was far outweighed by the prejudice to plaintiff. This objection is not substantiated and is without merit. Furthermore, no such objection was made at the trial.

■ Next, plaintiff claims the court erred in overruling plaintiff's objection to cross-examining plaintiff as to confidential communications between husband and wife. Plaintiff testified on direct examination that after the fall he rested a while, thinking he could go on to work, but because he continued to bleed and suffer pain he went back up the stairs and knocked at the door. His wife, who had been in bed, arose and opened the locked door to admit him. This occurred in the cross-examination of plaintiff:

"Q * * * Did you tell her what happened to you that night?

"A I didn't say a word to her because—

"MR. SILVERSTEIN: I don't want to get into conversation between husband and wife.

"THE COURT: Overruled. Proceed.

You didn't tell your wife how you happened to fall and hurt yourself?

"MR. SILVERSTEIN: I object to that on the grounds it's husband and wife privilege—

"THE COURT: Overruled.

"MR. DEVOTO: I believe he answered.

"Q You didn't tell your wife how you had fallen down the steps?

"A I didn't say nothing to her."

This is said to have violated § 491.020, V.A. M.S., and the rule that "communications between husband and wife, which are not made in the presence of third persons, are confidential and privileged, and cannot be used without the specific consent of the parties involved absent waiver."

There are three unusual factors in this situation. First, the question called for a disclosure of the fact whether or not a communication had been made, rather than calling for the substance of a disclosure that was made. Second, the testimony revealed that in fact *no* communication was made. Third, this was not an effort to exclude the testimony of one spouse that no communications were made by the other spouse, but was an effort to exclude the testimony of the *noncommunicating* spouse. Generally, the rule excluding communications from the other spouse has been held to prohibit only testimony as to the substance of the matter communicated, and not to prohibit a husband or wife from relating the fact that a communication was made by the other, without telling what was communicated. Anno.—Acts as *Confidential Communications*, 10 A.L.R.2d 1389, § 3, p. 1396. If the fact that a communication was made is not privileged the fact that a communication was *not* made would likewise be unprivileged. Idem, p. 1397. "Negative testimony by one spouse that his spouse had not told him a certain matter is not incompetent as a privileged communication." 97 C.J.S. Witnesses § 270a, p. 774. In Thayer v. Thayer, 188 Mich. 261, 154 N.W. 32, a widow's testimony that her husband had never

accused her of unchastity in any way was held not a privileged communication. In Spaulding v. Albin, 63 Vt. 148, 21 A. 530, a wife's testimony that in an interview with her husband the note in question was not mentioned was held not a confidential communication. In Spicer v. State, 115 Tex. Cr.R. 110, 28 S.W.2d 810, this question was asked the accused in a homicide prosecution, "Did your wife ever tell you that she shot deceased?" (in this case the wife claimed she, not he, did the shooting), to which the accused answered "No." It was held that "the witness having answered the question in the negative, no privileged communication was elicited." In United States v. Guiteau, (1882, D.C.) 1 Mackey 498, 47 Am.Rep. 247, testimony by the wife that the husband had not exhibited any acts indicating insanity was held not an infringement of the privilege. We hold that the privileged communication rule did not exclude the testimony of the husband that shortly after he was injured he saw his wife but did not say a word to her about what happened to him or that he had fallen down the steps; that the fact of not communicating what befell him was a proper subject for cross-examination.

Plaintiff next assigns error in permitting the cross-examination of plaintiff with respect to prior lawsuits, and inquiring into the confidential communications between attorney and client.

 Plaintiff's petition alleged injuries to his jaw, back, spine, hips, legs and entire nervous system. In his opening statement plaintiff's counsel made no claims for back injury, and referred only to the injury to his jaw and loss of two teeth, and on direct evidence plaintiff adduced no evidence regarding injury to parts of his body other than his jaw and teeth. On cross-examination defense counsel asked plaintiff if he had ever previously brought suit for injuries to his person. An objection on the ground of immateriality was sustained. Plaintiff was then asked whether he had ever before brought a suit for

injury to his back, arm or shoulder. Another objection was made, plaintiff's counsel pointing out that plaintiff was not making claim for back, etc. injuries, but only for injuries to his jaw and teeth. The latter question was never answered. Defense counsel then insisted on the right to cross-examine the witness as to whether he "did not tell someone at some time he hurt his back," in view of the allegations in the petition about back injuries. The court permitted the inquiry and plaintiff was asked whether he told his attorney about the accident . . . about the nature of his injuries. Plaintiff's counsel objected on the ground that this was privileged as a confidential communication between attorney and client. The objection was overruled. Plaintiff then testified that he told his attorney that his arm, leg and hip, but not his back, were injured. Later plaintiff testified he told his attorney his back was hurt; that he had a bruise. Plaintiff testified that his arm, leg and hip were injured in the fall. Then plaintiff was asked whether he had ever made a claim or filed a lawsuit for injury to his arms or other injuries to his body, but this was not answered, the court sustaining objections to the latter questions.

We find no error in these rulings, as charged. Plaintiff claims these questions created the impression in the minds of the jury that plaintiff was a habitual filer of lawsuits, and that these were fraudulent, but we find no basis in these questions for such an inference. Plaintiff cites Cammarata v. Payton, Mo.Sup., 316 S.W.2d 474, and Marrah v. J & R Motor Supply Co., Mo. App., 165 S.W.2d 271, for the proposition that it is error to permit evidence to be introduced concerning prior lawsuits which involved injuries not involved in the present litigation. The difficulty with this position is that the trial court in the instant case *excluded,* instead of admitting, testimony with reference to prior lawsuits. Cross-examination of plaintiff with respect to injuries to his back, spine, hips, legs, etc. was not improper, where he alleged these

injuries in his petition but claimed lesser injuries at the trial. Defendant properly could show the inconsistency of plaintiff's position. Plaintiff could not complain, where the evidence adduced by the cross-examination showed he suffered more injuries than those for which he was asking damages at the trial. We do not find any violation of the rule that communications between attorney and client are privileged. Having alleged the injuries and testified as to their nature, plaintiff was open to inquiry as to their extent and whether he communicated the facts with reference thereto to his attorney. A client cannot avail himself of the privilege to shield himself from a disclosure of facts which are a legitimate subject of inquiry. Chellis v. Chapman, 52 Hun. 613, 7 N.Y.S. 78, aff. 125 N.Y. 214, 26 N.E. 308, 11 L.R.A. 784; 97 C.J.S. Witnesses § 276a, p 785, fn. 69.

■ Finally, plaintiff assigns error in defendant's statement and interrogation of plaintiff, on cross-examination, that plaintiff's prior injury was "no accident." On direct examination plaintiff was asked if he had any scars on his face as a result of his fall down the steps. He replied in the affirmative and was asked to turn his face toward the jury and show them. Two scars were evident. He pointed to one of them as the scar from this accident. On cross-examination defense counsel asked about the other scar, and plaintiff said it was "from another accident." Defense counsel then said "Well, that was no accident—" and "My question is this. Your fractured jaw of 1953 was no accident, was it?" This precipitated an objection and request for mistrial (out of the hearing of the jury) on the ground that "in 1953 the plaintiff's jaw was fractured when he was assaulted by Captain John Dougherty of the St. Louis Police Department, and as a result of that assault there was a good deal of publicity for about three or four months in St. Louis. I think any mention of how he fractured his jaw in 1953 is completely immaterial and irrelevant * * * attempt to prejudice the jury * * *." The objection was overruled, and the question was restated in this form: the first time you fractured your jaw it "wasn't an accident like an automobile accident or an accident like you described here [a fall], was it?" Plaintiff answered "No" and that concluded the inquiry on this point. It was never disclosed to the jury that the first fracture was caused by a policeman striking him. Plaintiff says this created the wrong impression, and conveyed to the jury the idea that plaintiff lied when he said it was an accident, and that the real purpose of the inquiry was to refresh the minds of the jury about the "notorious" 1953 incident, and thereby prejudice plaintiff. There is no error here. Plaintiff having testified that the other scar was from an accident, defense counsel had the right to cross-examine and elicit the fact from plaintiff, in self-contradiction, that it was not an accident in the accepted sense of the word. We cannot say that the cross-examination had the necessary effect of resurrecting the eight-year-old incident in the minds of the jurors.

Finding no error, the judgment is affirmed.

COIL, C., not participating.

HOLMAN, C., concurs.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.