MILLER *v.* UNION PACIFIC RY.

*(Circuit Court, D. Colorado. June, 1882.)*

1. NEGLIGENCE—CONTRIBUTORY—MASTER AND SERVANT.

   If a master or another servant, standing towards the servant injured in the relation of superior or vice-principal, orders the latter into a situation of danger, and he obeys and is thereby injured, the law will not charge him with contributory negligence, unless the danger was so glaring that no prudent man would have entered into it, even under orders from one having authority over him.

2. SAME—A QUESTION OF FACT.

   If the circumstances be such that men of ordinary intelligence may honestly differ as to the question of negligence, it must be left to the jury.

On Demurrer.

*L. S. Dixon* and *G. H. Gray*, for plaintiff.

*Willard Teller*, for defendant.

McCrary, C. J. The complaint avers, among other things, the following facts:

*First.* That the defendant contracted with plaintiff for his services as a carpenter to work at his trade for defendant, and that by the terms of the contract plaintiff was to report to and work under the orders and instructions of a foreman employed by the company to superintend and oversee the carpenter work of said company at a certain coal mine, situated on a branch line of defendant's railroad in Elbert county, Colorado.

*Second.* That plaintiff was directed to and did proceed to said coal mine, and there reported to one Miles McGrath, the foreman of said company, there engaged in the superintendence and oversight of the carpenter work of said company at said coal mine, and who was also, in like manner, a foreman of said company to superintend, oversee, and perform work for the company, with carpenters under him, at other places, as he might be from time to time directed by the company.

*Third.* That by said contract plaintiff was to continue in the service or employment of said company until he should voluntarily withdraw from the same, or until he should be discharged from the same by order or direction of the said foreman, Miles McGrath.

*Fourth.* That plaintiff entered upon service in pursuance of the contract, and commenced work under the orders of said McGrath, and so continued until January 19, 1880, when he was injured as in the complaint stated.

*Fifth.* That the company had, upon its said branch line, a certain four-wheeled platform car, commonly denominated a "push-car," which was wholly unprovided with any machinery or other mechanical means of propulsion or movement, and was designed to be and was moved and propelled along the track by the hands of laborers or men walking behind and pushing the same, except at those places where by the downward grade or descent of the track the same would be moved and carried along by the law of gravitation.

*Sixth.* The said car was provided with no brakes or other means of checking its speed when in motion.

*Seventh.* That said car had been and then was in frequent and common use by said company, in the departments of repair and construction of said company, upon said branch road and upon a certain section of the main line, and was furnished by said company to be so used, in the movement and transportation of tools and materials, and, as occasion might serve or require, of laborers and workmen upon and along said branch road and a portion of said main line.

*Eighth.* That on two occasions plaintiff had ridden upon said car, the same being propelled by hand from the station to said coal mine.

*Ninth.* That, as plaintiff has since been informed and believes, push-cars designed and furnished to be used as above described, when they are to be used upon steep grades, are usually furnished with brakes, and that the grade upon the branch aforesaid was steep and heavy.

*Tenth.* That on the nineteenth of January, 1880, the foreman above named received a telegraphic order from the defendant company to take the carpenters so at work under him, being three in number besides plaintiff, and proceed with them, by the next eastern-bound train over said company's main line, to a station called Cheyenne Wells, distant about 100 miles, there to perform certain carpenter work for the company.

*Eleventh.* That thereupon said foreman caused the said push-car to be taken to the coal mine, and being there present in a position of authority, ordered the plaintiff and the other carpenters in great haste to pick up and pack their tools, bedding, blankets, etc., and put the same on the push-car, for transportation, and also ordered the plaintiff and two of his companions to get upon said car, which order they obeyed, and thereupon the foreman himself got upon said car and started it down the grade, with a view to reaching the station in time for the east-bound train. The car being heavily loaded, and having no appliances to control its velocity, soon acquired a great and dangerous rate of speed, and was approaching the station, where, by collision with other objects on the track, there was great danger to the persons on board. To avoid this greater danger the plaintiff jumped from the car and was injured.

*Twelfth.* That plaintiff was not familiar with the manner of using and operating push-cars, and fully believed it was safe for him to obey the order of the foreman and get upon said car.

The contention of the counsel for the defendant is that the complaint shows upon its face that plaintiff was guilty of contributory negligence. That the act of going upon the push-car, loaded as it was, and proceeding down a steep grade without the means of retarding or stopping its movement, was an act of negligence, is clear. *Miller* v. *Union P. R. Co.* 4 FED. REP. 768. This is not denied, but the plaintiff insists that the allegations of the present complaint, taken to be true, show that the negligence which caused the injury was wholly the negligence of the defendant company. In determining this question we are to assume for the present that the company furnished the push-car to be used, among other things, for the purpose of transporting workmen to and from their work; that it had been used for that purpose; that the foreman, McGrath, had authority to order and direct the plaintiff to go upon it, which order he was bound to obey, upon peril of dismissal from the service; and that plaintiff was unfamiliar with the operation of such car, and ignorant of the fact that the car was without brakes or other means of controlling its movement. Under such circumstances can it be said, as a matter of law, that he was guilty of negligence in obeying the foreman's order to go upon the car? We think not. The true rule is, that if a master or another servant, standing toward the servant injured in the relation of superior or vice-principal, orders the latter into a situation of danger, and he obeys and is thereby injured, the

law will not charge him with contributory negligence, unless the danger was so glaring that no prudent man would have entered into it, even under orders from one having authority over him.    2 Thompson, Negligence, 974-6.

There may be cases in which a court can say, as matter of law, that a servant receiving an order from his master, or from a superior, is guilty of negligence in obeying it, but the present is not such a case.    The law will rarely declare the act of obedience negligence *per se.*    If the circumstances be such that men of ordinary intelligence may honestly differ as to the question of negligence, it must be left to the jury.    *Lalor* v. *Railroad Co.* 52 Ill. 401; *O'Neil* v. *Railroad Co.* 9 Fed. Rep. 337.

The demurrer to the complaint must be overruled, and it is accordingly so ordered.