## MARY RICE *vs.* KING PHILIP MILLS.

Bristol. Oct. 29, 1886. — March 23, 1887. DEVENS, W. ALLEN, & HOLMES, JJ., absent.

A part of a machine used in a cotton mill consisted of a pulley, over which a chain passed, to one end of which was hung a weight. An extra weight was hung by a raw-hide lacing to a hook made of wire, fastened into the chain to which the other weight hung. The extra weight did not come with the machine, and was not specially intended as a weight. It had been used upon the machine for about two years for the purpose of moving more rapidly a part of the machine, but the weight had been off at times during the two years, and the machine operated successfully without it, although better with it. A person who was employed upon the machine was injured by the falling of the weight, in consequence of the breaking of the lacing. *Held*, in an action for such injury, that, there being no dispute how the weight was attached, or as to its purpose, it was rightly ruled that the weight was a part of the machine.

In an action for personal injuries occasioned to the plaintiff while in the employ of the defendant, by the falling of a weight, in consequence of the breaking of a lacing by which the weight was hung to a hook fastened into a chain attached to a machine on which the plaintiff was at work, the defendant asked the judge to instruct the jury as follows : "The duty of seeing that the lacing by which the weight was put on the machine was properly secured, or was a suitable one, was a duty which the defendant could delegate to an employee ; and if it was delegated, and the employee was provided with suitable means to repair or replace the lacing, then the neglect of such employee to see that the same was properly renewed or was a suitable one was the neglect of a fellow servant of the plaintiff, and the plaintiff cannot recover for any injury caused by such neglect." The judge declined so to rule, and instructed the jury as follows : " If the master provides suitable appliances and competent persons to attend to them, he has done his duty. If he provides proper persons to see that his machinery is kept in proper condition to use, and the injury is caused by the negligence of the person so employed, the master is not liable, and a person so employed to keep the machinery in repair is a fellow servant, within the rule. If you find that the weight, as tied up by the lacing, was not a proper machine, and the defendant knew or ought to have known it, the defendant is liable, if the accident happened while the plaintiff was in the exercise of due care." *Held*, that the defendant had no ground of exception.

TORT for personal injuries sustained by the plaintiff while in the employ of the defendant corporation. Trial in the Superior Court, before *Thompson*, J., who allowed a bill of exceptions, in substance as follows :

The plaintiff is about fifty years of age, of ordinary intelligence, and for the greater part of her life has worked in cotton mills. The defendant corporation is engaged in the manufacture

of cotton cloth, and owns and runs two large mills containing together about one hundred thousand spindles, and employing upwards of a thousand hands.

The plaintiff had worked for it for upwards of seven years before the accident occurred for which this action is brought, in the carding-room, and all the time on the same machine on which she was hurt. This machine is called a slubber, and takes the ribbons of cotton as they come from the cards and railway heads and an intermediate machine, and twists them into a coarse yarn, which is wound on bobbins set on the front of the machine. In order to wind this yarn on the bobbins in successive layers, and so as to make the full bobbins taper from the middle towards each end, the machine is so constructed as to give the bobbins an upward and downward motion while the twisting and winding process is going on. A part of the machinery for securing this motion consists of a small grooved pulley, two or three inches in diameter, over which a chain passes, which is attached at one end to an upright shaft, on which is a small gear which runs into a horizontal rack, and to the other end is hung a weight. This arrangement was intended to regulate the successive layers of yarn on the bobbin, and with each change in the upward or downward motion of the bobbin the rack moves about half an inch, and the weight drops about the same distance. This occurs several times a minute, and continues until the bobbin is full, when the machine stops. This work is all done automatically.

The machine is about twenty feet in length, and about four feet wide and four and a half feet high, with iron posts or stanchions on the sides and solid iron at the ends. As the machine is constructed, the weight hangs in sight on the back side of the machine, about eight or ten inches inside these posts or stanchions, and about a third of the length of the machine from the outer end, or end next the wall of the mill; at its highest point it is about a foot and a half, and at its lowest about six to eight inches, above the floor. There are generally standing on the floor behind the machine three rows of tin cans about two and a half feet high, which hold the ribbons of cotton, and from which the ribbons are taken by the slubber. While these stand there, they obstruct the view of the weight. They are empty

more or less of the time, or are moved away to get at the machine to clean it. At the time of the accident, the plaintiff testified that the weight was at about its highest point. There is ample room around the machine. The duty of the plaintiff was to see that the machine was kept running, to take off the full bobbins and put on others, to notify the overseer or his subordinates if she knew there was anything wrong about the machine, and to see that it was kept clean. It appeared that, on the day before the accident, the plaintiff had called on the third hand to repair a belt, which he had done.

The plaintiff testified that, on the day of the accident, she had cleaned a considerable portion of the machine during the noon hour; that after the noon hour she took off the bobbins, which were all full, started up the machine, and went round to the back side to finish cleaning; that she was down on the floor on her knees near where the weight hung, leaning on her right hand, which was on the floor, palm downwards, and brushing off inside the machine, which was in motion, with a brush in the left hand; and that an extra weight, which had been hung by a raw-hide lacing to a hook fastened into the chain to which the other weight hung, fell upon her right hand, in consequence of the breaking of the lacing, and caused the injuries complained of.

The hook was made of wire considerably larger than the chain to which it was fastened, and was bent up at the lower end about an inch, and remained undisturbed. The extra weight did not come with the machine, and was not specially intended as a weight. There was evidence tending to show that this extra weight, which weighed about fifteen pounds, had been used upon this machine for about two years, for the purpose for which it was being used at the time of the accident, that is, of moving more rapidly the horizontal rack and the bobbins, so as to prevent the yarn from running off the bobbins; that the weight had been off and on during the two years, and that the machine operated successfully without it, although better with it. On cross-examination, the plaintiff stated that the weight was off for a short time about three or four months prior to the accident.

The plaintiff testified that, after the weight fell, she saw the lacing hanging in the hook broken, but did not examine it.

A witness for the plaintiff testified that he saw it hanging there broken, took it up and drew it through his fingers, and hung it back; and that it looked rotten.

The defendant introduced evidence tending to show that the lacing was not broken; that the extra weight. had hung from this hook for about two years off and on, suspended by the same raw-hide lacing by which it was held when it fell; and that, about four or five months before the accident the weight had been taken off by the second hand and laid on the floor, to make it easier for the plaintiff to manage the machine. It appeared that one Wood, the third hand, put it back a few weeks after, but it did not appear who put it on originally; there was no evidence that there had been any extra weight on this machine prior to about two years before the accident.

The defendant offered to show that, as matter of fact, the weight was not a part of the machine. But the court excluded the evidence, and ruled, as matter of law, that the weight, being. so used upon the machine, did constitute a part of the machine. The defendant excepted.

It appeared that in the room where the plaintiff worked and in an adjoining room there were forty machines similar to that on which the plaintiff worked, and on these and other machines extra weights, similar to the one above described and for the same purpose, were used more or less, and when used were fastened in a manner similar to that adopted in this case ; and that the overseer of the room where the plaintiff worked kept on hand, and had on hand at the time of this accident, rope and lacings for the purpose of supplying the place of any rope or lacing that should become worn or broken.

On cross-examination, the overseer testified that he had lacings on hand the day before and after, and that he had them on hand that day ; that no one had access to his desk, the place where they were kept, except the second hand; but admitted that he was away that day, and did not know that, on that day and at that time, there was one there.

One Collins, the second hand, testified that he had taken none from the overseer's desk on that day ; that under the overseer and second hand there was a third hand, whose business it was to see that these machines were kept in repair, and who

procured from the overseer, or from the second hand, rope or lacing as it was needed.

The third hand had an assistant, who likewise attended to repairs on these machines. If the condition of a machine or any of its parts was such that the third hand or his assistant could not make the repair, notice was given to the boss machinist, who attended to it.

The plaintiff testified, that, up to the time of the accident, there was nothing wrong about the machine; that it was running all right up to the time of the accident; that she had no fault to find with it; that there was not anything that could be said against the machine ; that it had run well all the time she had worked on it, seven years, with very little fixing; that she never spoke to Wood or Collins about the machine needing any fixing; that she saw the weight hanging right there on the hook the whole two years; that when Wood put it back, she said nothing about its being dangerous, and was not aware there was any danger in it; and that it looked all right to run until it broke.

It appeared that there was a superintendent for the mills, and an overseer, second hand, third hand, and an assistant for the card-room ; that it was the duty of the superintendent to supervise in a general way the running of the mill; that the overseer had the general management of the running of the room ; that the second hand was his second officer, to act in his stead if he was absent from the room, and have charge of the help and attend generally to the running and discipline of the room as a second officer; that the third hand looked after and repaired the machines when they were out of order, and any hand that had trouble with his machine went to the third hand and he fixed it; that the corporation furnished materials for the purpose of repair; that the superintendent, in all ordinary cases, attended to the ordering of them except in large orders, and got his information as to what was wanted from the overseer, and from the second and third hands.

The plaintiff contended that it was unsafe to suspend the extra weight by a raw-hide lacing, but introduced no evidence as to the strength of raw-hide lacing, like the one in question. The defendant contended that the lacing was safe ; and, in addition

to the facts as to the length of time the extra weight had been sustained by the lacing in question, introduced evidence tending to show that such a lacing would sustain a weight of upwards of two hundred pounds.

The defendant asked the judge to instruct the jury as follows: "1. Neither upon the plaintiff's case nor upon the whole case can this action be maintained. 2. The weight, which the plaintiff claims injured her, formed no such part of the machine on which she was working as to render the defendant liable for any injury caused by any imperfection in the manner in which it was put on the machine. 3. The duty of seeing that the lacing, by which the weight was put on the machine, was properly secured, or was a suitable one, was a duty which the defendant could delegate to an employee; and if it was delegated, and the employee was provided with suitable means to repair or replace the lacing, then the neglect of such employee to see that the same was properly renewed or was a suitable one was the neglect of a fellow servant of the plaintiff, and the plaintiff cannot recover for any injury caused by such neglect."

The judge declined so to rule; and instructed the jury, among other things, as follows: "There being no dispute as to how the weight was attached and the purpose for which it was attached, I instruct you that the weight, as attached, was a part of the machinery, and if the defendant knew of the condition of the appliance, or might by the exercise of ordinary care have known it, and the plaintiff did not know and by the exercise of ordinary care could not have known it, and the injury happened while the plaintiff was in the exercise of due care, the master is liable; otherwise, not. If the master provides suitable appliances and competent persons to attend to them, he has done his duty. If he provides proper persons to see that his machinery is kept in proper condition to use, and the injury is caused by the negligence of the persons so employed, the master is not liable, and a person so employed to keep the machinery in repair is a fellow servant within the rule. If you find that the machine, as made and used, shows no want of ordinary care on the part of the defendant, then the defendant is not liable. If you find that the weight, as held up by the lacing, was not a proper machine, and that the defendant knew or ought to have known it,

the defendant is liable, if the accident happened while the plaintiff was in the exercise of due care."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*J. M. Morton & A. J. Jennings*, for the defendant.

*J. W. Cummings*, for the plaintiff.

FIELD, J.  The evidence of the manner in which the weight was attached to the machine, of the purpose for which it was attached, and of the effect produced by it in the working of the machine, being undisputed, the court rightly ruled that it was a part of the machine, within the meaning of the law that the defendant was bound to exercise due care in furnishing suitable machines, and in keeping them in proper repair.

There was evidence for the jury that the plaintiff was in the exercise of due care.  There was evidence that she did not know, and that it was not her duty to know, that the weight was attached to the chain in an unsafe manner, or that the lacing was, or had become, too weak to support the weight.  She knew that the weight was attached to the chain by a raw-hide lacing, but it was not necessarily a part of her duty to decide whether this was a suitable or safe means of hanging the weight, and she may have known nothing of the strength of raw-hide lacings.

The difficulty in the case arises from the refusal of the court to give to the jury the last instruction requested by the defendant.  It is the duty of the master to exercise due care in employing competent servants, in providing suitable machines, and in keeping them in proper repair, and the master cannot wholly escape responsibility by delegating these duties to a servant.  If this could be done, a master might escape all responsibility by employing a competent superintendent to perform all these duties.  But there are defects in machinery which are of such a character that the master has been held to perform his duty if he furnishes suitable materials, and employs competent servants, and instructs them to keep the machinery in repair, although the servants neglect to make the repairs, or make them in an improper manner.  The master must exercise a reasonable supervision over the manner in which his business is done; but the repairs which machines properly constructed require to keep them in running order may be entrusted to competent servants.

They are regarded as incidental to the use of the machines, because they are such as machines in substantially good repair must from time to time need.

Perhaps the whole question is whether the master has exercised reasonable care in employing competent servants, in providing suitable machines and implements, and in doing that part of his business which he has undertaken to do himself, and has exercised a reasonable supervision over his servants in the performance of the duties which he has entrusted to them. This is often a question for the jury. Courts have therefore held that they could not say, as matter of law, that a master was not responsible for injuries occasioned by defective machinery, when the defect was substantial and rendered the machine unfit for use, although it was through the neglect of a competent servant that the machine had not been repaired; and they have also held that, when the defect was one that must frequently arise from the use of the machine, and was such that the person employed to superintend the use of the machine should attend to in order to keep it in running order, the master performed his whole duty by furnishing suitable materials and employing competent servants to keep the machinery in repair. These decisions have been made in cases where it appeared that the defect in the machinery was unknown to the master. The general question is what under the circumstances the master ought reasonably to have known and done, and, in determining this, the nature of the defect, the length of time it has existed, and the means taken to remedy it, are important facts. In the present case, the court instructed the jury that the person employed to keep the machine in repair was a fellow servant with the plaintiff; and that, " if the master provides suitable appliances and competent persons to attend to them, he has done his duty. If he provides proper persons to see that his machinery is kept in proper condition to use, and the injury is caused by the negligence of the persons so employed, the master is not liable." These instructions comprise substantially all that is contained in the instruction requested, except that they require that the servants be competent, and that the appliances furnished be suitable. If there was no evidence that the servants of the defendant were incompetent, and we are not certain that all the evidence on

this point is contained in the exceptions, still the defendant did not specifically call the attention of the court to this, or ask any ruling upon it; and it was for the jury to say whether the raw-hide lacings furnished were proper appliances, and whether the defendant had used due care in furnishing proper appliances. The court then instructed the jury: "If you find that the weight, as held up by the lacing, was not a proper machine, and that the defendant knew or ought to have known it, the defendant is liable, if the accident happened while the plaintiff was in the exercise of due care." This instruction required the jury to find whether the raw-hide lacings furnished were proper appliances, or whether the particular lacing used was defective, and whether the defendant knew it, or ought to have known it.

The defendant asked for no further instructions upon the nature of the facts, or the circumstances upon which the jury might find that the defendant ought to have known that the machine was defective. If the master knew, or under the circumstances ought to have known, that a machine in use was out of repair and dangerous, it was his duty to see that it was put in proper repair, or to warn those using it of the danger, if they were ignorant of it. *Snow* v. *Housatonic Railroad*, 8 Allen, 441. *Ford* v. *Fitchburg Railroad*, 110 Mass. 240. *Holden* v. *Fitchburg Railroad*, 129 Mass. 268. *Johnson* v. *Boston Tow-Boat Co.* 135 Mass. 209. *Spicer* v. *South Boston Iron Co.* 138 Mass. 426. *McGee* v. *Boston Cordage Co.* 139 Mass. 445. *Ellis* v. *New York, Lake Erie, & Western Railroad*, 95 N. Y. 546. *Pantzar* v. *Tilly Foster Iron Mining Co.* 99 N. Y. 368. *Benzing* v. *Steinway*, 101 N. Y. 547. *Hough* v. *Railway*, 100 U. S. 213.

*Exceptions overruled.*