(6 Misc. Rep. 328.)

RETTIG v. FIFTH AVE. TRANSP. CO., Limited.

(Superior Court of New York City, General Term. December 29, 1893.)

1. MASTER AND SERVANT—NEGLIGENCE OF MASTER—EVIDENCE.
    The superintendent of a master's business ordered a servant to assist in opening a large door, knowing it to be in a dangerous condition, and, while the servant was so engaged, the door fell on him. It was not the servant's duty to open the door, unless specially ordered to do so, and there was no evidence that he had ever opened it before or knew of its condi- tion. Held, that the questions of negligence and contributory negligence were properly submitted to the jury.

2. TRIAL—INSTRUCTIONS—ASSUMING FACTS.
    An instruction which assumes a material fact is properly refused.

3. MASTER AND SERVANT—USE OF TOOLS FURNISHED BY MASTER.
    Where a master orders his servant to use a certain implement, and, while using it, the servant is injured, the master cannot afterwards claim that it was negligence to use such implement.

4. DEATH BY WRONGFUL ACT—PROXIMATE CAUSE OF DEATH.
    At the time of the accident, decedent was a strong and healthy man, and when he was injured he was removed to a hospital, where he died five months later. The attending physician testified that "he died from the result of his injury;" that his condition necessitated a surgical operation; and that he died from the shock thereof. Held sufficient to show that death was the result of the injury.

Appeal from jury term.

Action by Lizzi Rettig, as administratrix of George Rettig, de- ceased, against the Fifth Avenue Transportation Company, Limited.

From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals.    Affirmed.

Argued before FREEDMAN, McADAM, and GILDERSLEEVE, JJ.

Chas. Steele & C. De Gersdorff, for appellant.
Chas. Steckler, for respondent.

McADAM, J.    The action was brought, under the statute, to recover damages for the negligent acts of the defendant in causing injuries to one George Rettig, which resulted in his death.    It appeared that the decedent, a stage cleaner, in the employ of the defendant, was on August 26, 1890, engaged with one McKenna, a co-workman, in the stage stables, cleaning the stages of the defendant corporation, when Mr. Parker, the superintendent of the horse department, called upon the decedent and McKenna to open a large door for the admission of a stage just returned from a trip, for the purpose of changing the horses.    The door was massive and heavy, and had been originally hung on three wheels, placed on a bar that ran across the top of the door.    Two of these wheels had disappeared, one after the other, until, on the day of the accident, there was but one wheel left to support and run the door.    In the performance of his duty as superintendent, Parker, a week prior to the accident, had notified the president, general manager, purchasing agent, and foreman of the building of the condition of the door, which was evidently unsafe and dangerous, so that the fact became known to the officers of the defendant, as well as to the superintendent.    With this knowledge, and without giving notice of the danger, the superintendent commanded the decedent and his fellow workman to open the door.    They obeyed the direction, and, while endeavoring to perform the command, the sole remaining wheel broke, and the door fell upon the decedent, inflicting upon him injuries of so serious a character as to necessitate his removal to the Presbyterian Hospital, where he died on the 29th of January following.    The defendant undertook to show that the door fell because the decedent and his fellow workman used a wooden pole to pry it open; but the evidence shows that there was nothing unusual in the use of the pry, for the superintendent swears:    "I had given orders to use the pole, and it had been used. I had it there for that purpose."    It was no part of the regular duty of the decedent or his fellow workman to open the door.    They were employed as stage cleaners, and, while subject to the orders of the superintendent, were obliged to do nothing but clean the stages as they came in, except, on occasions like the one in question, when they received special directions, which they were obliged to obey.    There was also an effort on the part of the defendant to show that the decedent had knowledge of the dangerous condition of the door, but the testimony offered on this subject proved nothing material in that regard.    Indeed, the superintendent, in an-

swer to a question by the court, testified that he would not swear that the decedent had ever opened the door before. The same witness testified that the decedent told him that "if he had known," or "ought to have known," that the door was in that state, he ought not to have gone near it. The evidence on this point failed to prove that the decedent had the knowledge the defendant undertook to impute to him, and the jury evidently believed that he had no such knowledge, for there was no reason to suppose he had. Parker, the superintendent, was an alter ego representing the master in all matters pertaining to the running of the stable. Indeed, according to the evidence of the defendant's witness McKenna, Parker was regarded by all concerned as the "boss," and the injuries complained of were occasioned by yielding obedience to his orders while engaged in the master's service.

The ground of liability of the master to the servant is for subjecting him, through negligence, to risks greater than those which fairly and properly belong to the employment in which he is engaged. Thomp. Neg. 970. A master is bound to take ordinary and reasonable care not to subject his servant to unreasonable or extraordinary dangers, by sending him to work in dangerous buildings, or with dangerous tools, or appliances. Id. 972. The same rule has been applied, and with sound reason, where the person injured was ordered into a service of peculiar danger, such he did not undertake to perform, by another servant, standing towards him in the relation of superior or vice principal. If he obeys such an order, and is injured, he may recover damages. Id. 975.

In Kranz v. Railroad Co., 123 N. Y. 1, 25 N. E. 206, the decedent was ordered to aid in cleaning certain water pipes, placed underground at the defendant's depot at Bay Ridge. A trench had been opened for that purpose by the sectionman and laborers under his direction some hours before the decedent commenced work upon the pipes. That was a necessary step to furnish him a proper opportunity for the performance of his own duty. He entered the trench, and began to disconnect the pipes, and, while so engaged, the earth caved in upon him, and he died of suffocation. The court held that:

"Those who opened the trench were performing the master's duty to the deceased in preparing a suitable place and opportunity for the labor of the intestate in the discharge of his duty; * * * and, when the master ordered the intestate to perform his work as a machinist in the trenches opened and prepared for him, he had a right to assume that the place had been made reasonably safe by the master, through other and competent servants employed by him."

See, also, Pantzar v. Mining Co., 99 N. Y. 368, 2 N. E. 24.

In McGovern v. Railroad Co., 123 N. Y. 280, 25 N. E. 373, the master directed the servant to perform work at a place which proved dangerous, and the court held that, where such danger may be foreseen and guarded against by the exercise of reasonable care, it is the master's duty to exercise such care, and adopt such precautions as will protect the servant. The master is bound to

know that his appliances are reasonably safe, unless the defect be one not discoverable by careful inspection or by the application of appropriate tests.    Probst v. Delamater, 100 N. Y. 266, 3 N. E. 184.

In the present case, express notice of the defects and of the dangerous condition of the door was given to the officers of the defendant corporation by its superintendent a week before the accident happened, and, notwithstanding this, the servant was ordered into a place of danger by the superintendent, unapprised of the risk he was assuming.    A clearer case of negligence could hardly be established.    Aside from the fact that Parker was an alter ego, it is a well-settled principle that, whenever the relation of master and servant exists, a special duty devolves upon the master to provide for the safety of his servant in many important respects.    He must furnish suitable machinery, tools, and appliances, and he must provide a safe place for his servant to work.    Hough v. Railroad Co., 100 U. S. 213; Railroad Co. v. McDaniels, 107 U. S. 454, 2 Sup. Ct. 932; Rice v. King Philip Mills, 144 Mass. 229, 11 N. E. 101; Railway Co. v. Fox, 31 Kan. 586, 3 Pac. 320; Mitchell v. Robinson, 80 Ind. 281.    That it is the law in this state that the master cannot relieve himself from this obligation by delegation will be seen by reference to the authorities.    Pantzar v. Mining Co., 99 N. Y. 368, 2 N. E. 24; Benzing v. Steinway, 101 N. Y. 547, 5 N. E. 449; Cullen v. Norton, 126 N. Y. 1, 26 N. E. 905; Ellis v. Railroad Co., 95 N. Y. 546; Slater v. Jewitt, 85 N. Y. 61; Wood, Mast. & S. § 438.    The same rule has been adopted in other states.    Car Co. v. Parker, 100 Ind. 181; Killea v. Faxon, 125 Mass. 485; Brabbits v. Railroad Co., 38 Wis. 289.    While the servant assumes the ordinary risks of his employment, and, as a general rule, such extraordinary risks as he may knowingly and voluntarily see fit to encounter, he does not stand on the same footing as the master, as respects the matter of care in inspecting and investigating the risks to which he may be exposed.    He has the right to presume that the master will do his duty in that respect; so that, when directed by proper authority to perform certain services, or to perform them in a certain place, he will ordinarily be justified in obeying orders, without being chargeable with contributory negligence, or with the assumption of risk in so doing.    Cook v. Railroad Co., 34 Minn. 45, 24 N. W. 311.    See, also, 14 Amer. & Eng. Enc. Law, 843; Railway Co. v. Ross, 112 U. S. 377, 5 Sup. Ct. 184; Cone v. Railroad Co., 81 N. Y. 206; Connolly v. Poillon, 41 Barb. 366; Miller v. Railway Co., 12 Fed. 600; Stephens v. Railroad Co., 86 Mo. 221; McDermott v. Railroad Co., 87 Mo. 285.    The application of these principles to the present contention required the trial judge to submit the questions of negligence and contributory negligence to the jury, and this he did by instructing the jury that, in order to recover, the plaintiff was bound to establish two propositions:    One, that the accident happened through the neglect of the defendant; and the other, that it happened without any negligence on the part of the deceased contributing thereto.    These propositions were

reiterated, and, at the request of the defendant's counsel, the court charged the following propositions:

"The plaintiff is bound to satisfy the jury, by the preponderance of evidence, not only that the defendant's negligence caused the death of the deceased, but also that the deceased himself did not help in any way to cause the accident by his own carelessness." "The plaintiff is bound to prove that the death of the deceased was caused by the accident." "The mere fact that the accident occurred and the deceased was injured does not establish any negligence on the part of the defendant." "The occurrence of the accident is not by itself evidence of negligence on the part of the defendant." "The mere fact that the stable door which fell upon the deceased was out of repair does not by itself constitute any evidence of defendant's negligence." "The master's obligation to furnish reasonably safe appliances for his servant's use is limited by a corresponding duty on the servant's part to exercise reasonable care in their use." And that "if the jury believe the accident was occasioned, not by the condition of the door, but by Rettig's attempt to pry it open with a pole or lever, then the plaintiff cannot recover." And that, "if you believe that the door could have been safely opened by any one using reasonable care in the operation, the plaintiff cannot recover." That "the plaintiff can recover only the pecuniary damages occasioned to the deceased's next of kin by his death." And that "any pain and suffering of the deceased, or grief and bereavement of his family, cannot be taken into account in estimating the damages to be recovered." And that "no exemplary or punitive damages can be awarded in this action; they must be confined solely to the pecuniary loss resulting from the deceased's death."

This was certainly stating the law as favorably to the defendant as it had the right to demand.

The defendant went further, and requested the court to charge that:

"(6) If the jury believe that the deceased knew the door was out of repair, and continued to work with it, the plaintiff is not entitled to recover, and there must be a verdict for the defendant. (7) Although the jury believe that the defendant knew about the condition of the door, and did not have it repaired, the deceased, by continuing in his employment, assumed the risks of injury from the want of repair, and the plaintiff is not entitled to recover. (8) The danger, if any, arising from the condition of the door, was a plain and obvious one, and the deceased, having used the door in that condition, must be presumed to have assumed the risk of accident from that source, and the plaintiff, therefore, cannot recover. (9) If the jury believe that Rettig's attempt to open the door by prying it with a pole or lever contributed to any extent whatever to cause the accident, the plaintiff cannot recover." "(13) The deceased had no right to resort to the use of the pole to pry open the door. If he could not open it in the ordinary way, he should not have attempted to open it at all, and in using a pole or pry for the purpose he assumed the risks of accident from such an attempt."

These requests, numbered as above, were refused, and the exceptions taken to the refusal constitute the most serious objections urged by the defendant against the judgment as grounds for its reversal.

The rule is that, in considering whether a single proposition contained in a charge is erroneous, it will be construed in connection with the context, and the whole charge, or so much of it as is connected with and tends to modify or explain the part claimed to be objectionable, will be considered. Baylies, New Trials, 183; Sperry v. Miller, 16 N. Y., at page 413; Caldwell v. Steamboat Co., 47 N. Y. 282; Hickenbottom v. Railroad Co., 122 N. Y. 91, 25 N. E. 279;

Chellis v. Chapman, 125 N. Y. 214, 26 N. E. 308.   So understood, we will consider the requests seriatim.

The sixth request is founded on the erroneous assumption that there was evidence that the decedent knew the door was out of repair.   The only evidence upon the subject was given by Parker, the superintendent, who first testified, "I can't swear that I remember that Rettig ever opened the door before;" and afterwards testified, "I state now, from this paper, that I had seen Rettig open the door before."   He does not state when, nor does he undertake to say that Rettig ever knew of the dangerous condition into which it had fallen, or that he ever told him, although he was careful to notify the officers of the corporation of the fact.   Rettig had nothing to do with the door; his duties never called him there, but elsewhere; and he would have had nothing to do with it on the occasion when he met his injuries if the superintendent had not specially commanded him to open it, and if he, like a faithful servant, had not obeyed the command.   No duty of inspection devolved on Rettig.   There was no evidence or inference from facts on which the jury could have found or even implied knowledge on the part of Rettig.   He evidently had no knowledge on the subject.   The command by the superintendent, acting in place of the master, was equivalent to an assurance that the door was all right, and it was so regarded.   The superintendent saw the means taken to open the door, and offered no remonstrance or suggestion of danger. The rule that a servant takes the risk of the service presupposes that the master has performed the duties of care and vigilance which the law casts upon him.   It only excuses where injury results to the servant from a hazard incident to the nature of the employment, not from a cause which the exercise of proper care and prudence on the part of the master would have foreseen and guarded against.   Pantzar v. Mining Co., supra.   The onus of proving absence of contributory negligence was on the plaintiff, but she was not bound to prove want of knowledge in the decedent.   The trial judge recognized the rule, for he carefully charged the jury that the plaintiff could not recover if the decedent "helped in any way to cause the accident."   There was evidently no contributory negligence.   The decedent was negligently, not intentionally, lured to his death, and the civil responsibility for it is on the defendant.

The seventh request is founded on the same erroneous assumption, and was properly refused for the same reason.

The eighth request is founded on the erroneous assumption that the danger was "a plain and obvious one," when in truth it was one discoverable only by investigation, and the duty of inspection did not devolve on the decedent.

The ninth request assumed that the use of the pole was improper conduct on the part of the decedent, and charged him with the consequences of the accident, or part of them, ignoring the fact that Parker, the superintendent, had testified:   "I had given orders to use the pole, and it had been used.   I had it there for that purpose."   It was, in effect, asking the court to tell the jury to disregard the command given by the alter ego to the servant, which

the latter had the right to assume was safe and proper, for the duty of inspection was on the master, represented by him.

The thirteenth request was founded on the same erroneous assumption.

The servant has the undoubted right to rely upon the superior knowledge of the master, and is justified in acting on the belief that the latter has performed his full duty, unless the danger is so obvious as to inform him to the contrary, and there was nothing of the kind in this case. A request to charge is improper if based upon an assumption not supported by the evidence. Tochman v. Brown, 33 N. Y. Super. Ct. 409; Burdick v. Freeman, 120 N. Y. 420, 24 N. E. 949. Requests to charge upon hypothetical propositions, based upon assumed facts, are properly refused, where the law had been fully and fairly charged. James v. Chamberlin, 4 Wkly. Dig. 183. A refusal to charge a proposition which, however true it may be, so far as applied to the case, is a mere abstraction, is not error. Priebe v. Bridge Co., 77 N. Y. 597; Menard v. Stevens, 44 N. Y. Super. Ct. 515; Hine v. Bowe, 114 N. Y. 350, 21 N. E. 733; Bank v. Koch, (N. Y. App.) 12 N. E. 9; Kissenger v. Railroad Co., 56 N. Y. 538; Moody v. Osgood, 54 N. Y. 488. A court is not bound to give instructions in the language in which they are asked. If those given sufficiently cover the case, and are correct, the judgment will not be disturbed. Railroad Co. v. McCarthy, 96 U. S. 258. Taking the charge in its entirety, it is apparent that the case was fairly, intelligently, and understandingly submitted to the jury in every possible legal phase. They awarded the plaintiff $2,500 damages, a sum not claimed to be excessive. The requests to charge that were declined were technical in the extreme, and were, for reasons not more technical, properly refused.

The defendant also insists that there was not sufficient evidence that the death of the decedent was directly and proximately due to the injuries received by the accident. The accident happened August 26, 1890, and the decedent died January 29, 1891. The plaintiff proved that the decedent, at the time of the injury, was 32 years of age; that he was a strong, healthy man, and had never before been sick. The witnesses all agree that the injuries received were of a serious character, and that the decedent had to be taken to the hospital in an ambulance. He did not leave the hospital until after his death, and one of the attending physicians testified, "He died from the result of his injuries;" that his condition necessitated a surgical operation, which was skillfully performed; and that he died of the shock which followed. This testimony as to the cause of death was received without objection, and would have been relevant even if it had been objected to. Eggler v. People, 56 N. Y. 642; Turner v. City of Newburgh, 109 N. Y. 301, 16 N. E. 344; People v. Willson, 109 N. Y. 345, 16 N. E. 540; Rosc. Crim. Ev. (7th Ed.) 708. The surgical operation and the consequences flowing from it in no manner relieved the defendant, for it has been decided that "where a person who, through the negligence of another, has received an injury which, without a surgical operation, would cause his death, employs a competent and skillful

surgeon, by whose mistake the operation is not successful, and the patient dies, the wrongdoer is not shielded from liability by the surgeon's error; and this, although the operation is the immediate cause of the death." Sauter v. Railroad Co., 66 N. Y. 50. There was no pretense of mistake here on the part of the surgeon. On the contrary, the operation in this instance was skillfully performed; so that the case cited goes further than is necessary to go to uphold the judgment now under review. We have carefully considered the various objections urged, and they are, for the reasons stated, without merit. The judgment was right, and the order appealed from properly made. They must therefore be affirmed, with costs. All concur.