### CUNNINGHAM v. SICILIAN ASPHALT PAVING CO.

(Supreme Court, Appellate Division, First Department. March 23, 1900.)

1. INJURY TO EMPLOYE—SAFE PLACE FOR WORK.

A platform, though consisting of loose and movable boards placed on beams, being one on which a part of the employer's work is regularly done, is a permanent structure, and a "place" to work in, and having broken when an employé was on it, and there being evidence that it was moth-eaten and rotten, negligence of the master is a question for the jury.

2. SAME—CONTRIBUTORY NEGLIGENCE.

An employé has a right to assume that a permanent platform on which he is put to work is a reasonably safe place to work, and the fact that a board in it which breaks under him is afterwards found to be rotten and moth-eaten does not charge him with contributory negligence; it being the first time he was on it, and the condition not being apparent on a passing glance, or the danger obvious and imminent.

Appeal from trial term, New York county.

Action by John Cunningham against the Sicilian Asphalt Paving Company. From a judgment for defendant on dismissal of the complaint, and from an order denying a motion for new trial, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Gilbert D. Lamb, for appellant.
Joseph Fettretch, for respondent.

BARRETT, J. This is an action for damages resulting from an injury to the plaintiff, alleged to have been occasioned by the de-

fendant's negligence. The defendant is a manufacturer of asphalt. It has a factory in the city of New York. In one part of this factory there was at the time of the plaintiff's injury a series of bins, some 15 or 16 feet in height. These bins were used as receptacles for the crude material. There was a railroad over the top of the bins. The material was brought up in cars, and dumped from the latter into the bins. To accomplish this the workmen had to stand upon a platform, which consisted of two loose planks. These planks were placed upon the side of the railroad track, and were about 6 inches from it. They rested on cross beams underneath the track. Although these planks were loose and movable, yet they constituted a platform upon which a part of the company's work was regularly done. In that sense, the structure was permanent in its nature. It was not an ordinary "appliance," relating to an isolated job or a transient undertaking. It was essentially a "place" where the defendant's business was permanently conducted, and where its employés were steadily required to work. The plaintiff was a common laborer, and at the time of his injury had been in the defendant's employ for but nine days. The accident occurred upon the 19th of January, 1897. Upon the morning of that day the plaintiff was ordered by the defendant's foreman to go up on the platform and help another employé to dump material from the cars. This was the plaintiff's first employment in this particular work. He accordingly went up on the platform, and spent over four hours in dumping material into bin No. 1. So far his work was without incident. He then moved over upon the platform some 7 feet, and began dumping material into bin No. 2. He had removed the material from two cars into this bin No. 2, and was removing it from the third car, when one of the planks gave way and precipitated him into the bin, injuring him quite severely. While in the bottom of the bin, he was able to see this broken plank; and he testified that it was rotten all through, "worn in the center, and on the two sides it was moth-eaten and dozed. You could stick your fingers in the timber." Upon these facts, we think the case was plainly for the jury. The defendant was bound to furnish the plaintiff with a reasonably safe place to work in. That was its duty, and it could not exempt itself from liability for nonperformance by delegating performance to another. Benzing v. Steinway, 101 N. Y. 547, 5 N. E. 449. It was a breach of that duty to permit the platform upon which the plaintiff was here required to work to wear out and become rotten. It is well settled that the unexplained giving way of a permanent structure upon which employés are required to work is prima facie evidence of the master's negligence. Solarz v. Railway Co., 8 Misc. Rep. 656, 29 N. Y. Supp. 1123, affirmed in 11 Misc. Rep. 715, 32 N. Y. Supp. 1149, and 155 N. Y. 645, 49 N. E. 1104; Green v. Banta, 48 N. Y. Super. Ct. 156, affirmed in 97 N. Y. 627. Here, however, there was enough to go to the jury upon the question whether the defendant, with ample time for inspection, had permitted the use of an unfit plank. The condition in which the plaintiff found the broken plank after the accident indicates clearly that the break resulted from gradual decay. This was not within

the cases where platforms have been constructed for temporary purposes, or where the employés, after the master has furnished them with good and sufficient materials, have themselves built the temporary structures. Here, as we have seen, the platform was essentially a permanent place provided for the doing of the defendant's regular and steady work. Under such circumstances, it was the defendant's duty to see to it that that place was a reasonably safe one.

There is nothing in the point as to contributory negligence. The plaintiff had a right to assume that the working place provided for him by the defendant was reasonably safe. Rettig v. Transportation Co., 6 Misc. Rep. 328, 26 N. Y. Supp. 896, affirmed in 144 N. Y. 715, 39 N. E. 859. There was no obvious danger or extraordinary risk attendant upon the use of the platform. It by no means follows, because the plank was found to be moth-eaten and rotten after the accident, that that condition would have been apparent upon a passing glance at it prior to the accident. The plaintiff was not bound before using the platform to inspect the planks minutely and weigh all possible risks. So long as the danger was not obvious and imminent, he was justified in relying upon the master's performance of his duty. The question upon both heads was for the jury, and the nonsuit was erroneous.

The judgment and order denying the plaintiff's motion for a new trial should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.