JOHN CUNNINGHAM, Appellant, *v.* SICILIAN ASPHALT PAVING COMPANY, Respondent.

*Negligence — injury from the breaking of a rotten plank, loose but used permanently alongside of a bin.*

A platform consisting of two loose movable planks, continuously maintained by the side of a series of bins in a factory, upon which workmen are obliged to stand when dumping material into the bins, is a permanent "place" within which the work of dumping is done, and not an ordinary "appliance" used in such work.

Evidence that one of the planks broke while a workman was upon it for the first time, and that the plank which broke was rotten all through, "worn in the center, and on the two sides it was moth-eaten or dozed. You could stick your fingers in the timber," is sufficient to require the submission to the jury of the questions of the employer's negligence and of the employee's contributory negligence.

APPEAL by the plaintiff, John Cunningham, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 18th day of November, 1899, upon the dismissal of the complaint by direction of the court after a trial before the court and a jury at the New York Trial Term, and also from an order entered in said clerk's office on the 14th day of November, 1899, denying the plaintiff's motion for a new trial made upon the minutes.

*Gilbert D. Lamb,* for the appellant.

*Joseph Fettretch,* for the respondent.

BARRETT, J. :

This is an action for damages resulting from an injury to the plaintiff, alleged to have been occasioned by the defendant's negligence. The defendant is a manufacturer of asphalt. It has a factory in the city of New York. In one part of this factory there was at the time of the plaintiff's injury a series of bins some fifteen or sixteen feet in height. These bins were used as receptacles for the crude material. There was a railroad over the top of the bins. The material was brought up in cars and dumped from the latter into the bins. To accomplish this the workmen had to stand upon

a platform which consisted of two loose planks. These planks were placed upon the side of the railroad track, and were about six inches from it. They rested on crossbeams underneath the track. Although these planks were loose and movable, yet they constituted a platform upon which a part of the company's work was regularly done. In that sense, the structure was permanent in its nature. It was not an ordinary "appliance" relating to an isolated job or a transient undertaking. It was essentially a "place" where the defendant's business was permanently conducted, and where its employees were steadily required to work.

The plaintiff was a common laborer, and at the time of his injury had been in the defendant's employ for but nine days. The accident occurred upon the 19th of January, 1897. Upon the morning of that day the plaintiff was ordered by the defendant's foreman to go up on the platform and help another employee to dump material from the cars. This was the plaintiff's first employment in this particular work. He accordingly went up on the platform and spent over four hours in dumping material into bin No. 1. So far his work was without incident. He then moved over upon the platform some seven feet and began dumping material into bin No. 2. He had removed the material from two cars into this bin No. 2, and was removing it from the third car when one of the planks gave way and precipitated him into the bin, injuring him quite severely. While in the bottom of the bin, he was able to see this broken plank; and he testified that it was rotten all through, "worn in the center, and on the two sides it was moth-eaten or dozed. You could stick your fingers in the timber."

Upon these facts, we think the case was plainly for the jury. The defendant was bound to furnish the plaintiff with a reasonably safe place to work in. That was its duty, and it could not exempt itself from liability for non-performance by delegating performance to another. (*Benzing* v. *Steinway*, 101 N. Y. 547.) It was a breach of that duty to permit the platform upon which the plaintiff was here required to work to wear out and become rotten. It is well settled that the unexplained giving way of a permanent structure upon which employees are required to work is *prima facie* evidence of the master's negligence. (*Solarz* v. *Manhattan R. Co.*, 8 Misc. Rep. 656 ; affd. Gen. Term, 11 id. 715 ; affd. in Court

of Appeals, 155 N. Y. 645; *Green* v. *Banta*, 48 N. Y. Super. Ct. 156; affd., 97 N. Y. 627.)

Here, however, there was enough to go to the jury upon the question whether the defendant, with ample time for inspection, had permitted the use of an unfit plank. The condition in which the plaintiff found the broken plank after the accident indicates clearly that the break resulted from gradual decay.

This was not within the cases where platforms have been constructed for temporary purposes, or where the employees, after the master has furnished them with good and sufficient materials, have themselves built the temporary structures. Here, as we have seen, the platform was essentially a permanent place provided for the doing of the defendant's regular and steady work. Under such circumstances it was the defendant's duty to see to it that that place was a reasonably safe one.

There is nothing in the point as to contributory negligence. The plaintiff had a right to assume that the working place provided for him by the defendant was reasonably safe. (*Rettig* v. *Fifth Avenue Transportation Co.*, 6 Misc. Rep. 328; affd., 144 N. Y. 715.) There was no obvious danger or extraordinary risk attendant upon the use of the platform. It by no means follows because the plank was found to be moth-eaten and rotten after the accident, that that condition would have been apparent upon a passing glance at it prior to the accident. The plaintiff was not bound before using the platform to inspect the planks minutely and weigh all possible risks. So long as the danger was not obvious and imminent, he was justified in relying upon the master's performance of his duty. The question upon both heads was for the jury, and the nonsuit was erroneous.

The judgment and order denying the plaintiff's motion for a new trial should be reversed and a new trial ordered, with costs to the appellant to abide the event

VAN BRUNT, P. J., RUMSEY, O'BRIEN and INGRAHAM, JJ., concurred.

Judgment and order reversed, new trial ordered, costs to appellant to abide event.