(59 App. Div. 79.)

KIRAS v. NICHOLS CHEMICAL CO.

(Supreme Court, Appellate Division, Second Department. March 8, 1901.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—NEGLIGENCE OF MASTER—UN-
   SAFE PLACE—LIABILITY.
      Plaintiff was employed in wheeling hot slag from smelting works to the
   outer edge of the dumping ground. The dumping ground was in a wet
   place, and the action of the tide was liable to cause cracks in the slag,
   exposing the water beneath. Hot slag emptied into such a crack, and
   coming in contact with the water, would cause an explosion, of which
   plaintiff had no knowledge. Plaintiff was at work with a night force,
   and just before daylight the foreman directed him to dump in a certain
   place. In crossing the ground the car ran into a crack, which had opened
   about three days before, of which plaintiff was unaware, and, overturn-
   ing, emptied its contents, and an explosion immediately followed, injuring
   plaintiff. *Held*, that the master was liable for his neglect to exercise care
   in avoiding a danger known to him, and which could have been easily
   avoided.
2. SAME—ASSUMPTION OF RISK.
      Plaintiff did not assume the risk, as the work did not create the danger,
   which was not obvious, and as it could have been avoided by the exercise
   of reasonable care on the part of the master.

Appeal from trial term, Queens county.

Action for injuries by Frank Kiras against the Nichols Chemical
Company. From a judgment in favor of plaintiff, defendant appeals.
Affirmed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCH-
BERG, JENKS, and SEWELL, JJ.

Charles C. Nadal (Edward P. Mowton, on the brief), for appellant.
F. W. Catlin, for respondent.

HIRSCHBERG, J. At the time the plaintiff received his injury
he was working for the defendant. The latter carries on the busi-
ness of smelting ores at Laurel Hill, Queens county. Marshy grounds
adjoining the premises are used for the dumping of the hot, semi-
liquid slag or dross which remains as a result of the smelting process.
This dumping ground, formed by the slag, had been two or three
years in process of creation, being smoothed off as it cooled and
hardened, and filled up as it cracked, so as to form a space of con-
siderable extent, estimated at from 150 to 200 feet square, over
which the workmen were required to wheel iron cars or "buggies"

full of the hot slag, and to dump them at the outer edges of the ground. The evidence shows that the action of the tide is liable to cause cracks to open in the dumping ground, especially on or near the edges, and to expose the water, but that the hot slag may be emptied slowly into such cracks without danger of explosion from contact with the water, but that if the contents of the "buggy" is suddenly emptied steam will be generated in a dangerous quantity and an explosion occur. Some of defendant's witnesses testified that the proper course to pursue in filling the cracks was to first empty ashes into the crack before pouring in the slag. The plaintiff had been at work some seven or eight months, but it is not claimed that he knew, or had any reason to know, that a dangerous explosion would result from the sudden emptying of slag into water.

At the time of the accident the dumping ground was in charge of a foreman, whose duty it was to direct the men where to dump, and to keep the ground in good condition. A crack had opened up two or three days before the accident, gradually enlarging and widening, and of the existence of which the plaintiff had no knowledge. Its precise location is not clearly established, but there is evidence which would justify the belief that it was rather in the center of the dumping ground than at the edge. On the 27th of March, 1899, the plaintiff was working in the night gang all night, the accident occurring before daylight, but as the day was dawning. He had been emptying his buggies away from the direction of the crack, but at or about 5 o'clock he was directed by the foreman to go in the opposite direction, and on the first trip his wheel sunk into the crack, suddenly overturning, and emptying his buggy, an explosion immediately following, which seriously injured him, among other things entirely destroying the sight of his left eye.

The learned counsel for the appellant insists that the risk which the plaintiff encountered was incident to his employment, and invokes the rule referred to in O'Connell v. Clark, 22 App. Div. 466, 467, 48 N. Y. Supp. 74, that "the principle of a safe place does not apply where the prosecution of the work itself makes the place and creates its dangers." I think the principle does apply in this case, and under the circumstances as they must be assumed to have been found by the jury. The ground selected by the defendant was wet, and subject to the constant action of the tide. This created a danger not obvious to the ordinary workman, and, as the evidence indicates, only known to those possessing superior knowledge and skill, viz. that a dangerous explosion would result from the sudden contact of a large quantity of the liquid metal with water. The work which the plaintiff was required to perform was to wheel the metal from the building to and across the dumping ground, and to dump it when the end of the ground was reached. This work did not create the danger, nor, in a legal sense, did it make "the place" over which he was obliged to go, so as to absolve the master from the duty of exercising ordinary care to keep it safe. He was obliged to cross this dumping ground in the dark, and the danger which threatened him was not obvious, nor would he have necessarily known the consequences of an accident had he seen the menace. The danger was

created by the negligence of the defendant's representative to whom was assigned the duty of keeping the ground over which the plaintiff was obliged to pass, in order to reach the place where he was to do his work, in a reasonably safe condition. This was not in any sense a detail of the work, and the duty could not be delegated so as to relieve the defendant from the consequences of nonperformance. The cases of overhanging rocks and banks, cited by the appellant, are not in point. There the danger is created by the workmen themselves in undermining the material. Here the crack was not created by the dumping of the slag, although it may have been formed at a place where slag had been dumped two or three years before. The crack was formed by the action of the tide, and had no connection or relation with the work in progress, excepting to open up a dangerous fissure in the pathway which the workmen were obliged to travel in the dark. I know of no case where it has been held that a master owes no duty to exercise care, to some extent at least, in the discovery and avoidance of so likely a danger, and one which would be fraught with such serious consequences.

The principle which distinguishes this case from those where the servant assumes the risks of his employment is illustrated in Pantzar v. Mining Co., 99 N. Y. 368, 2 N. E. 24, where, as here, the danger was caused by the action of the elements. Chief Judge Ruger said (page 376, 99 N. Y., and page 26, 2 N. E.):

"The motion [for a nonsuit] assumes that the injury to the plaintiff occurred solely from a hazard incident to the nature of the employment, and not from a cause which could have been foreseen and guarded against by the exercise of proper care and prudence on the part of the master. This, however, was the very question which was disputed before the jury, and decided by it adversely to the appellant. The defendant's contention is based upon the evidence showing that it is the nature of gneiss rock to disintegrate and fall from time to time at unexpected intervals through the action of the elements operating upon it, but it does not follow from this fact that the master is excused from using proper precautions to protect his workmen from danger known to the master arising from such a cause. The very fact that the material was likely to fall upon and injure the defendant's servants at unexpected times imposed upon defendant the duty of inspection and frequent and careful examinations, and, upon the discovery of any indications of danger, to adopt all suitable precautions to protect its servants from injury. The rule that the servant takes the risk of the service presupposes that the master has performed the duties of caution, care, and vigilance which the law casts upon him. Booth v. Railroad Co., 73 N. Y. 40. It is those risks alone, which cannot be obviated by the adoption of reasonable measures of precaution by the master, that the servant assumes."

See, also, Buckley v. Ore Co. (Sup.) 2 N. Y. Supp. 133, affirmed in 117 N. Y. 645, 22 N. E. 1131; Cunningham v. Paving Co., 49 App. Div, 380, 63 N. Y. Supp. 357; Vanesse v. Coal Co., 159 Pa. St. 403, 28 Atl. 200.

"It may, we think," said the court of appeals in McGovern v. Railroad Co., 123 N. Y. 280, 287, 25 N. E. 373, 374, "be laid down as a general rule that the dangers connected with such a business [that is, employments either dangerous in themselves, or made so by the carelessness of those who carry them on], which are unavoidable after the exercise by the master of proper care and precaution in guarding against them, are risks incident to the employment, and

are assumed by those who consent to accept employment under such circumstances. But those dangers which are known, and can be mitigated or avoided by the exercise of reasonable care and precaution on the part of those carrying on the business, and injuries from which happen through neglect to exercise such care, are not incident to the business, and the master is generally liable for damages occurring therefrom." The injury in this case came from the neglect to exercise care in avoiding a danger known to the master, and which could have been easily avoided, and which affected a place furnished to the servant to work in. For such neglect the master is liable, under settled and well-established rules. The case was submitted to the jury in a charge remarkably favorable to the defendant, and containing no errors available to it. The damages are not claimed to be excessive, and the judgment and order should be affirmed.

Judgment and order affirmed, with costs. All concur.