MEEKER v. C. R. REMINGTON & SON CO.

(Supreme Court, Appellate Division, Fourth Department. June 9, 1901.)

MASTER AND SERVANT—NEGLIGENCE—IMPERFECT MACHINERY—SAFE PLACE TO WORK.

Defendant constructed an addition to its paper mill, and placed steam pipes therein, which were connected with the boiler and pipes in the old mill. No valve was supplied to shut off the steam from the new pipes, and at the time of the accident no pipe had been attached to draw off the water from condensed steam in the new pipes, though such a drip pipe was contemplated. A short time before the accident a considerable quantity of water was leaking from a "T" in the pipes, and defendant's overseer opened a small valve to drain the pipes, when "pounding" or "water hammer" followed, and soon thereafter the "T" burst, scalding plaintiff's intestate so that he died. *Held*, that a verdict finding that defendant was negligent in turning the steam into the new pipes before they were in proper condition to receive it was justified, and authorized a judgment for plaintiff, since defendant omitted that degree of diligence which the law requires every master to exercise in order to furnish his servants with a reasonably safe place in which to perform the duties required of them.

Appeal from trial term, Jefferson county.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and RUMSEY, JJ.

Watson M. Rogers, for appellant.
Henry Purcell, for respondent.

ADAMS, P. J. The defendant is a domestic corporation, and at the time hereinafter mentioned was engaged in the manufacture of paper and wood pulp at Glen Park, Jefferson county, in this state. On the 7th day of December, 1898, William H. Meeker, the plaintiff's intestate and husband, while in the service of the defendant, was killed by the bursting of a "T" at the end of a steam pipe in the defendant's mill, and this action, which was commenced on the 1st

·day of April, 1899, was brought to recover damages for his death, which, it is alleged, was caused by the negligence of the defendant.

This is the second time the case has been before this court upon appeal, and such facts as are material to the issues are fully set forth in the report thereof, which will be found in 53 App. Div., at page 592, 65 N. Y. Supp. 1116. By reference thereto, it will be ·discovered that for several years prior to the time of the accident the defendant had conducted its business at the place above mentioned, and, finding that its facilities were inadequate for its increasing business, had enlarged its mill so as to admit of the use of an additional 25-ton paper machine; and that at the time the accident occurred a line of wrought-iron pipe, which led from the boiler room to the engine room, where it was intended that the piping should be connected with the new engine, had been constructed and placed in position. On the morning of December 5th fires were started under the boilers, and steam was generated and allowed to pass into the entire system; that is, through the entire piping of both the old mill and the addition thereto. It is contended that at this time the new system was not in proper condition to admit of steam being turned into it. Whether or not this was so was the sole question submitted to the jury upon the last trial, and, as the jury were instructed by the learned trial justice, it was the only fact of which negligence upon the part of the defendant could be predicated. We are of the opinion that the evidence in the case not only amply justified the court in submitting this question to the jury, but that it was sufficient to sustain a verdict in favor of the plaintiff.

It was made to appear most conclusively that when steam was generated by either boiler it would pass into the main piping system, and flow to both of the mills, although, as testified to by the defendant's superintendent, the new mill was not then in readiness for its use. It was also made to appear by the same witness that there was no valve in the main line of piping by which the steam could be shut off from the engine room of the new part of the mill, although one might easily have been installed for that purpose. It further appeared that the steam which was thus admitted to the pipes was allowed to condense, and that water remained therein to the knowledge of the defendant; that the defendant's superintendent had designed a drip pipe, which was to be used for the purpose of relieving the pipes of the condensed steam, but that at the time of the accident it had not been constructed, or, at all events, had not been placed in position so that it could be used for that purpose, in consequence of which there was an utter absence of any drainage system whatever to the pipes, save such as might be obtained through a two-inch valve or shut-off, which is designated as valve "B."

On the 5th and 6th days of December, 1898, as well as upon the morning of the day of the accident, it was discovered that water in considerable quantities was leaking at the "T" from which it was designated to take the steam over to the engine; and between 9 and 10 o'clock on the morning of the accident the defendant's superintendent, having had his attention called to this leakage, opened

the valve in the two-inch pipe, when pounding, or what is technically known as "water hammer," followed, and in a very short time thereafter the "T" burst, causing steam to escape in large quantities, whereby the plaintiff's intestate, who happened to be in that immediate vicinity at the time, was so severely scalded that he died the following day.

We think these facts, which are practically undisputed, clearly establish negligence upon the part of the defendant, because the evidence tends to show that their existence was liable to produce just such a result as followed, and that that result could have been avoided if the defendant had taken reasonable care to prevent its occurrence; and, if this be so, then it is obvious that the defendant omitted that degree of diligence which the law requires every master to exercise in order to furnish his servants with a reasonably safe place in which to perform the duties required of them. Pantzar v. Mining Co., 99 N. Y. 368, 2 N. E. 24; Doing v. Railway Co., 151 N. Y. 579, 45 N. E. 1028; Byrne v. Eastmans Co., 163 N. Y. 461, 57 N. E. 738; Rice v. King Philip Mills, 144 Mass. 229, 11 N. E. 101. The case was carefully submitted to the jury by the learned trial justice, who was at great pains to explain clearly and precisely the rule of law applicable thereto, and to point out in detail what facts must necessarily be established in order to make the defendant legally responsible for the death of the plaintiff's intestate. There was little or no question of contributory negligence in the case, but such as there was was properly submitted to the jury, and we are unable to discover any exception which presents reversible error. We conclude, therefore, that the judgment and order appealed from should be affirmed.

Judgment and order affirmed, except as to an item of $150 additional allowance, which is involved in a separate appeal. All concur.